68 So.2d 604 (1953)
BEVERLY BEACH PROPERTIES, Inc. et al.
v.
NELSON et al.
Supreme Court of Florida, Special Division A.
February 27, 1953.
On Rehearing July 31, 1953.
Rehearing Denied December 3, 1953.
*605 Ward & Ward and Myers, Heiman & Kaplan, Miami, for appellants Beverly Beach Properties, Inc., and Samuel Friedland.
Hall, Hedrick & Dekle, Miami, for appellant Glynn O. Rasco.
Evans, Mershon, Sawyer, Johnston & Simmons and Herbert S. Sawyer, Miami, for appellant E.L. Lockhart.
Carl A. Hiaasen, McCune, Hiaasen & Kelley, Fort Lauderdale, for appellees.
PER CURIAM.
This is the second time we have been called on to consider this case. Nelson v. Beverly Beach Properties, Inc., Fla., 47 So.2d 310, wherein it was found that we had rarely been confronted with a case that ran into such involved and tedious complexities. We were convinced that the rights of all the parties should be settled in the litigation and reversed for that purpose. The mandate went down, testimony was taken and the chancellor entered a decree adjudicating the equities of the parties. We are now confronted with appeals and cross-appeals from the chancellor's decree.
Numerous questions are urged for reversal. In his opinion the chancellor found that on account of the lapse of time, complexities, and the cross-currents generated by the parties and their counsel in attempting to realize on their claims, the rem had *606 become so involved that it would be impossible to place them all in status quo. We so indicated in the former opinion. The pleadings and the evidence on which the chancellor's decree was predicated have been examined and we cannot say that error is clearly shown. We have searched diligently and are not advised in what respect the quality of justice could have been improved.
If another opinion would serve any useful purpose, we could do no better than to adopt the opinion and findings of the chancellor. They are detailed definite and specific. He knew the parties and the subject matter and was in much better position to pronounce justice than we are. The law of the case was pronounced in the former opinion and appears to have been followed scrupulously.
The judgment is accordingly affirmed.
Affirmed.
HOBSON, C.J., and TERRELL, THOMAS and MATHEWS, JJ., concur.

On Rehearing Granted
HOBSON, Justice.
This case made its first appearance before this Court, 47 So.2d 310, 317, on an appeal from an order of the presiding Chancellor which order was in effect a "split" decree in that it was final in some respects and interlocutory in others.
We wrote and released an opinion but, upon petition for rehearing, we modified the original opinion, our exact language being:
"We have rarely if ever been confronted with a case that ran into such involved and tedious complexities. We are convinced that the rights of all the parties should be settled in this litigation and reversed the judgment primarily for that purpose. Nothing said in our opinion was intended to prejudice the rights of any litigant, or to impede the chancellor in arriving at a proper decision." (Italics supplied.)
After the going down of our mandate the lower court, in obedience thereto, directed E.L. Lockhart, one of the claimants, to interplead and bring into the case the matters and things upon which he was relying for relief. When the cause was thus reopened extensive testimony was introduced by and on behalf of Lockhart. This additional testimony might have persuaded the Chancellor, but obviously it did not do so, to the conclusion that the price paid by appellants for the wild, unimproved, low-lying, unfilled acreage involved herein at the time of the sale (June, 1945) and under conditions then existing was the highest and best price obtainable, was fair and not grossly inadequate. Such testimony did apparently assist in convincing the Chancellor that Mr. Samuel Friedland was not guilty of actual fraud in the transaction wherein he purchased the real property which is the subject matter of this litigation.
As we understand it, the Chancellor was of the opinion and so decided that Mr. Friedland was guilty of constructive fraud (of which Beverly Beach Properties, Inc., cannot say it did not have notice because that corporation is Friedland's alter ego) in that he rushed through a "quick deal", which he knew was a good one for him, without "making any reasonable inquiry or investigation of the records of the corporation" which, had he done, he "could have been advised of the illegality of the meeting of the stockholders and directors because of the lack of any valid authorization to bind the interest of Olof Zetterlund as a stockholder and hence should be charged with knowledge of the fact that the newly elected purported officers of the corporation in fact had no valid authority to execute a deed for it."
In our recent opinion to which this petition for rehearing is addressed we said: "The law of the case was pronounced in the former opinion [47 So.2d 310] and appears to have been followed scrupulously."
In their petition for rehearing counsel for appellants take the position that in the first appearance of this case in this Court we did nothing more than reverse the cause *607 for further proceedings with directions that the rights of all the parties be settled in this one suit. It is their position that the modification of our original opinion on the former appeal wherein we said: "Nothing said in our opinion was intended to prejudice the rights of any litigant" considered in the light of our reversal, should be construed as a holding that we had not settled any questions of law presented in and by the original appeal and that in our recent opinion we failed to consider such fact when we said: "The law of the case was pronounced in the former opinion * * *."
Furthermore, counsel insist that if we held in our former opinion that a foreign guardian could not vote shares of stock of a corporation belonging to his ward as distinguished from selling real property situated in Florida which is owned by his ward, we departed from established law, failed to give full faith and credit to the judgment of the California court as required by Section 1, Article IV, of the Federal Constitution and should, on this petition for rehearing, hold that the California guardian had the right to vote the shares of stock which belonged to her ward, Olof Zetterlund, in stockholders' and directors' meetings of Elsinore Beach Corporation and Halland Land Company.
Counsel for appellees insist (1) that we decided in our opinion in 47 So.2d 310 that the Chancellor was correct in holding the guardian for Olof Zetterlund appointed by the California court had no authority to vote the shares of stock owned by her ward in the two Florida corporations, to-wit: Elsinore Beach Corporation and the Halland Land Company; (2) that such pronouncement became the law of the case and cannot now be overturned and (3) that in any event the Chancellor was correct in his original and final holding that the California guardian was not authorized to vote the shares of stock owned by her ward, Olof Zetterlund, in the two aforementioned Florida corporations and that the action of the corporations in selling the land to Samuel Friedland was void.
The position taken by counsel for appellants that we did no more in our opinion, and modification thereof, on the original appeal, than reverse the judgment and did not decide as a matter of law that the California guardian could not vote the stock owned by Olof Zetterlund in Elsinore Beach Corporation and the Halland Land Company is not devoid of merit. However, it is unnecessary to follow their argument since we are now of the opinion that the Chancellor erred in deciding as a matter of law that the California guardian had no authority to vote by proxy the shares of stock belonging to her ward and that we almost perpetuated such error.
This is the same suit and we have not lost jurisdiction thereof. Consequently, we have the power to correct any error which the Chancellor or we may have heretofore made in the progress of this litigation. There is no question of res adjudicata because this is the same, not a new and different, suit. However this Court, among others, has gone so far as to hold that it will not invoke the doctrine of res adjudicata if to do so would work injustice. The propriety of such ruling can not be questioned when one reflects upon the fact that the primary purpose for which our courts were created is to administer justice. In the case of Wallace v. Luxmoore, 156 Fla. 725, 24 So.2d 302, 304, we said:
"Stare decisis and res adjudicata are perfectly sound doctrines, approved by this court, but they are governed by well-settled principles and when factual situations arise that to apply them would defeat justice we will apply a different rule. Social and economic complexes must compel the extension of legal formulas and the approval of new precedents when shown to be necessary to administer justice. In a democracy the administration of justice is the primary concern of the State and when this cannot be done effectively by adhering to old precedents they should be modified or discarded. Blind adherence to them gets us nowhere."
A Court should have less hesitancy in changing "the law of the case" before lossing jurisdiction than it would have in refusing *608 to apply the doctrine of res adjudicata when all the requisites thereof are present. We may change "the law of the case" at any time before we lose jurisdiction of a cause and will never hesitate to do so if we become convinced, as we are in this instance, that our original pronouncement of the law was erroneous and such ruling resulted in manifest injustice. In such a situation a court of justice should never adopt a pertinacious attitude.
As heretofore observed, we have concluded that both the Chancellor and this Court (if indeed we did so decide) were in error in determining that the California guardian was not authorized to vote the shares of stock owned by Olof Zetterlund in Elsinore Beach Corporation and the Halland Land Company. We do, and should, recognize the fact that it was the Chancellor's duty to follow the law of the case as he interpreted it upon a consideration of our opinion in 47 So.2d 310, and certainly he should be commended rather than criticized for following the law of this case as he considered it had been laid down by this Court.
From 1930 until 1940 Olof Zetterlund had resided primarily in Florida. In 1940 he went to California. At that time Mr. Zetterlund, although aged, was apparently in good health. He purchased a home in California and placed the title of such real property in his then nurse and companion, Dora Miller. Thereafter he conducted all of his business by mail and telegraph, communicating by such methods with his representatives and attorneys in Broward and Dade Counties, Florida. In the early part of May, 1945, while Olof Zetterlund was still residing in California, the Superior Court of Los Angeles County, California, acting upon petitions filed in said court, determined that Olof Zetterlund was incompetent and appointed Dora Miller guardian for his person and estate. At that time Olof Zetterlund was in the jurisdiction of that court and had been for several years.
A full report was made to the California court concerning negotiations in Florida for the sale by two Florida corporations of the real property which is the subject of this litigation and which was owned by such corporations. Dora Miller, the guardian, designated Harold M. Davidson, a practicing attorney in the State of California, as her proxy to vote Zetterlund's stock in the aforementioned Florida corporations.
Davidson came to Florida and, under the authority of the California court and of the proxy given him by Dora Miller, voted the shares of stock owned by Zetterlund. Prior to the contract of purchase and sale entered into between Elsinore Beach Corporation and Halland Land Company on the one hand and Samuel Friedland on the other, several meetings were held and many negotiations were carried on while Davidson was present which resulted in Samuel Friedland finally offering to purchase the subject property for the price of $700,000. The actions of Davidson were reported back to the Superior Court of California which approved the contract.
Obviously, someone had to act as guardian for Zetterlund and since he was in California and had lived there approximately four years, California was the only state which had jurisdiction of the person as well as of the subject matter and the court of competent jurisdiction in that State was the only court which could have appointed a guardian for Zetterlund. No court in the ordinary administration of justice can exercise jurisdiction over a person unless he shall have voluntarily appeared or is within the jurisdiction of the court so that process may be served upon him.
Undoubtedly, the Superior Court of California had the right to appoint a guardian for Olof Zetterlund and such guardian, once appointed under the laws of California, became entitled to exercise voting rights of shares of stock owned by the ward in domestic as well as foreign corporations. The California guardian, under the laws of that jurisdiction, to all intents and purposes had the title to the stock of her ward  Zetterlund. California adopted as early as 1877 the rule that a guardian has more than *609 bare authority; he has "authority coupled with an interest." See Lincoln v. Alexander, 52 Cal. 482, 28 Am.Rep. 639.
Section 1517 of the California Probate Code reads:
"A guardian may give proxies to vote any shares of stock of a corporation, whether domestic or foreign, held in the estate, or to exercise any voting rights attaching to or arising from property held in the estate. He may waive notice of and consent to any meeting of shareholders or property owners or authorize by a writing any action which could be taken by shareholders."
Under the circumstances of this case, we are impelled to the view that the courts of Florida should give full faith and credit to the orders and judgments of the Superior Court of California which appointed the guardian of Olof Zetterlund and which authorized and approved the transaction consummated as a result of the guardian's proxy voting the ward's share of stock owned in the Florida corporations. The full faith and credit clause of the Federal Constitution requires that the courts of this State recognize the action of the California court in the appointment of the guardian, in the construction of the legality of that appointment and the actions of the guardian as such, so long as the guardian was acting under the laws of the State of California and consistently with the provisions thereof.
It is conceded by counsel for appellants that the California guardian could not have sold real property situate in Florida without ancillary proceedings in this State but we think a different rule applies with reference to the voting of shares of stock [intangible personal property to which the rule mobilia sequuntur personam is applicable] in corporations chartered by this State. Indeed the economy of this Nation might well be seriously affected if, in a situation such as is presented to us in this case, it should be generally held that a foreign guardian's action in voting the stock of his ward in a foreign jurisdiction was absolutely void. Moreover, such ruling in this case would do violence to the full faith and credit clause of the Federal Constitution.
Many cases from other jurisdictions have been cited which uphold the right of a foreign guardian or personal representative to vote stock owned by the ward or the estate when such stock is a part of the corporate stock of foreign corporations, particularly where the law of the state in which the guardian or personal representative is appointed gives that right and where under the laws of that state the executor, guardian or personal representative has title to the stock so voted. See Fletcher Cyclopedia Corporations, Permanent Edition, paragraph 2037; Kane v. Paul, 14 Pet., U.S., 33, 40, 10 L.Ed. 341, 345; Noonan v. Bradley, 9 Wall., U.S., 394, 399, 19 L.Ed. 757, 759; Griffith v. Frazier, 8 Cranch, U.S., 9, 21, 3 L.Ed. 471, 475; Elevator Supplies Co. v. Wylde, 106 N.J. Eq. 163, 150 A. 347; In re Election of Directors of Cape May & D.B.N. Company, 51 N.J.L. 78, 16 A. 191; American & British Mfg. Company v. International Power Co., 173 App.Div. 319, 159 N.Y.S. 582; Gow v. Consolidated Coppermines Corporation, 19 Del. Ch. 172, 165 A. 136; Investment Associates, Inc. v. Standard Power & Light Corporation, 29 Del. Ch. 225, 48 A.2d 501.
If this were not a case in which we are required by the Federal Constitution to give full faith and credit to the orders and judgments of the Superior Court of California, we would, nevertheless, be required to recognize the legislative enactments of California and the judicial acts of the Superior Court of that State as a matter of comity. In the case of Herron v. Passailaigue, 92 Fla. 818, 110 So. 539, 542, we said: "The rules of comity may not be departed from, unless in certain cases for the purpose of necessary protection of our own citizens, or of enforcing some paramount rules of public policy."
Upon the subject of the appointment of a guardian for an incompetent person neither the law nor the public policy of this State is inimical to the law and public policy *610 of the State of California. Our statute, Section 746.01, F.S.A., which was in full force and effect at the time of the appointment of Dora Miller as guardian of Olof Zetterlund by the Superior Court of California, provided that a guardian might be appointed for an incompetent person whether such person was "permanently or temporarily residing in this state". There is no provision of our law which requires a foreign guardian to take out ancillary proceedings in this State in order to vote shares of corporate stock, nor is there any prohibition in the law of Florida against a guardian appointed in this State voting shares of stock owned by the ward in corporations chartered under the laws of a sister state or states. There is every reason why the public policy of California and Florida should be similar with reference to the subject of appointing guardians for incompetent persons within the borders of such states whether residing therein permanently or temporarily. It is doubtful that any two states in this Nation parallel one another in so many ways as do Florida and California. Each state is a Mecca for tourists. It is a matter of common knowledge that many visitors to both States are approaching the evening tide of life. Such persons constitute the primary group in which is found the largest percentage of incompetents. The laws of both States should, and do, throw every safeguard around incompetents within their borders and when a court of competent jurisdiction in either State appoints a guardian for an incompetent person the lawful actions of such guardian should be recognized by the courts of the other.
It has not been made to appear by the evidence in this case or as a matter of law that the public policy or any salutary interest of the State of Florida requires that we refuse to recognize the orders and judgments entered by the Superior Court of California.
We do not find in the record proof of the character required to establish actual fraud. Certainly there is no proof which is so clear, convincing and unequivocal as to stamp Mr. Samuel Friedland with the ignominy of actual fraud. Every day honorable business men in making offers for the purchase of property place a limitation of time for the acceptance of such offers which may vary from a matter of hours to days or weeks. Since we have hereinbefore concluded that Mr. Friedland's knowledge of the fact that Olof Zetterlund was incompetent, and had been adjudged so by a court of competent jurisdiction in the State of California was not sufficient to justify the conclusion that Friedland was guilty of constructive fraud, there is no reason for us to fail to recognize his right to rely upon the orders and judgments of the California court and the action taken by the guardian appointed by that court through her proxy in voting the shares of stock owned by the ward in the two Florida corporations. Nor is there any reason for us to refuse to recognize the orders and judgments of the California court whether by virtue of the full faith and credit clause of the Federal Constitution or under the rule of comity.
The California court is a court of competent jurisdiction. It is by law vested with jurisdiction of the subject matter and acquired, for the purpose of determination of the questions presented to it, jurisdiction of the person of Olof Zetterlund.
It now appears from the decision rendered in the case of Nelson v. Miller, 9 Cir., 1952, 201 F.2d 277, that after our decision of Miller v. Nelson in 1948, 160 Fla. 410, 35 So.2d 288, the Florida Probate Court, acting under its conclusion that it could order the marshalling of assets in California as well as in Florida, required Dora Miller and Harold M. Davidson, who were appointed executors under the will, admitted to probate in California, to deliver their assets in California to the Florida executor. The executors appointed in California refused to recognize that order and so the Florida executors brought a suit in the United States District Court for the Southern District of California, Central Division, asking that the said Federal court enforce the order of the Probate Court of Dade County, Florida, and direct that the California *611 executors cease their administration and give up their assets to the Florida personal representatives. That court refused to do so, and on appeal the Circuit Court of Appeals for the Ninth Circuit upheld the position of the California court and recognized the validity of the California decrees, stating (see, 201 F.2d at page 279):
"Each state of the Union is sovereign and under the federal Constitution full faith and credit must be given judgments of each state by every other state within the Union. Art. IV, § 1, Constitution, U.C.S.A. Full faith and credit means that a judgment in one state must in the other state be given the full effect it is given by the law and usage in the state of its origin. And, too, the judgments of a state must be given the same full faith and credit in federal courts. Pennoyer v. Neff, 95 U.S. 714, 24 L.Ed. 565; 28 U.S.C.A. § 1738; Foster Milburn Co. v. Chinn, 2 Cir., 1913, 202 F. 175, 177. Such meaning obviously presupposes that the judgment is within the subject matter jurisdiction of the court pronouncing it. Hence inquiry on that point is always in order. Tilt v. Kelsey, 1907, 207 U.S. 43, 59, 28 S.Ct. 1, 52 L.Ed. 95. * * *
"Appellees here, after starting proceedings in the California court to probate the will and codicil upon the theory of decedent's California domicile at time of death, sought ancillary administration of property in Florida. Appellant here, after starting proceedings in Florida on the theory of decedent's domicile in that state at the time of death and after domiciliary proceedings had been denied to appellees in Florida, sought to compel the delivery of possession of the California property into the jurisdiction of the Florida court for administration. The difficulty, of course, devolved around the conflicting findings as to the domicile of decedent at time of death.
"There is, however, no authority for the claim made herein by appellant in his complaint below and made by appellees in their cross complaint below, that property of a decedent situated in one state can be required by any court to be administered by a court of another state, or that a federal court can interfere in a conflict resulting from irreconcilable findings of the two jurisdictions. Contrary and irreconcilable findings of the Florida and California courts as to the domicile of decedent at the time of death do not throw the conflict into a federal court for its resolution. Each state court can stand upon its findings as to domicile and apply its probate laws to the estate property situate within it. Having no jurisdiction over property outside its borders, its orders as to such property imposed no duty upon another state to recognize them on the doctrine of full faith and credit.
"Whatever may be the ultimate effect of the Florida court judgment as to the rights of heirs and beneficiaries under the will or under the will with the codicil, the right of possession of the probate court of either Florida or California as to property within the respective states cannot be affected."
If we adhere to this doctrine as established by the said Federal decision, then we are required to give full faith and credit to the proceedings in the Superior Court of California, Los Angeles County, which took place during the period of the guardianship administration. We cannot see how there could be any conflict as to jurisdiction between the States of California and Florida during the period of the guardianship proceedings because we hold to the rule that intangible personal property in contemplation of law, accompanies the person of the owner. See State ex rel. United States Sugar Corporation v. Gay, Fla., 46 So.2d 165; State ex rel. Seaboard Air Line Railroad v. Gay, 160 Fla. 445, 35 So.2d 403.
It is not proper for us to, nor do we, decide whether the California or Florida executors now hold title to the Zetterlund *612 stock in Halland Land Company and Elsinore Beach Corporation for the purpose of administration of the estate of Olof Zetterlund. We simply hold that during the guardianship proceedings the California guardian had the right under the directions of the California court to vote the stock in those two corporations and, having done so, no subsequent personal representative can complain.
As we have heretofore indicated, we do not intend to substitute our judgment for that of the Chancellor but will, and do, accept his finding of fact that the price paid for the property ($700,000) was grossly inadequate. We are, however, impelled to make several observations in connection with this subject. The partition suit instituted by Weaver and McGarry in 1941 was continued indefinitely for the very purpose of securing a better price for the property than it was considered by all parties concerned said property would bring at that time. During the period in which we were engaged in World War II, or at least until the last stages of said war, world conditions were such that people could not predict what the future had in store for this Nation and were naturally hesitant about investing in wild, low-lying unfilled and unimproved acreage which would require the expenditure of large sums for dredging, filling, bulkheading and other necessary improvements before it could be sub-divided, placed upon the market and profitably sold.
Although the property was offered widely to various interests and through numerous brokers, no bids were received which warranted serious consideration until during the winter and early spring of 1945 when some bids were received ranging from $500,000 to $550,000.
After Mr. Rasco and Mr. Davidson, while obviously indulging in "puffing", told Mr. Jamison and Mr. Friedland that they felt they might be able to get someone to pay a sum slightly in excess of $650,000, Friedland made his final offer of an additional $50,000 which was accepted.
Thereupon in June, 1945, the contract of purchase and sale was entered into by and between Halland Land Company and Elsinore Beach Corporation on the one hand and Samuel Friedland on the other. Mr. Davidson in his capacity as proxy approved said contract; his approval was subject, however, to the final approval of the Superior Court of Los Angeles County, California. Said court subsequently approved the transaction. None of the orders of the California court were ever impeached in that jurisdiction.
It is a matter of common knowledge that when real property is placed upon the open market for a reasonable length of time, in the absence of fraud, the price which it brings is usually accepted as the fair current market value thereof.
Under all the circumstances of this case and particularly in view of the fact that there was no fraud, either actual or constructive, at least upon the part of Samuel Friedland, we cannot be persuaded to hold that the price paid for the property was so grossly inadequate as to shock the conscience of a court of equity sufficiently to justify rescission based only upon inadequacy of consideration.
We deem it proper to remand, and to reinvest the Chancellor with jurisdiction of, this cause for he may, in the light of this opinion and in view of our reversal of the final decree as it affects Beverly Beach Properties, Inc., wish to consider anew the claims of Rasco and Burdet. That part of the final decree wherein all costs were taxed against Beverly Beach Properties, Inc., be and it is hereby also reversed with directions to the learned Chancellor that he reconsider the matter of the assessment of costs which were originally directed to be paid by the losing party. The decree of the lower court is not reversed as to E.L. Lockhart.
Reversed and remanded.
ROBERTS, C.J., and THOMAS, MATHEWS and DREW, JJ., concur.
TERRELL, J., dissents.
SEBRING, J., not participating.