[Civ. No. 20078.   Second Dist., Div. Three.   Oct. 1, 1954.]

MRS. SUMNER SPAULDING, Respondent, v. ARTHUR A. CAMERON, Appellant.

Belcher, Kearney & Fargo and Overton, Lyman, Prince & Vermille for Appellant.

Samuel A. Rosenthal, Leonard G. Ratner and Prinzmetal & Grant for Respondent.

SHINN, P. J.—This action for an injunction and damages was before the Supreme Court on a former appeal by defendant Cameron. The judgment was affirmed in part and reversed in part with instructions (38 Cal.2d 265 [239 P.2d 625]). The cause was remanded for further proceedings (p. 270). Such proceedings were had pursuant to the directions of the Supreme Court, and following a judgment against defendant for damages, he again appeals.

The first point to be considered is the refusal of the trial court to grant defendant's demand for a jury trial. At the first trial, the parties waived trial by jury. Following the issuance of remittitur by the Supreme Court, the cause was called up to be set and was assigned to Honorable Otto J. Emme, the judge who had conducted the first trial. Defendant demanded a jury; the demand was opposed by plain-

tiff and was refused. The question, therefore, is whether defendant was bound by his original waiver of a jury.

In order to avoid useless repetition, we make reference to the decision of the Supreme Court as to the nature of the action and give only a brief summary of the same. In 1946, defendant Cameron graded his hilltop property for the preparation of building sites in such manner as to cause an accumulation of a large quantity of loose earth on the hillside without taking measures which would prevent its being washed onto the property of plaintiff, which was improved with a two-level residence in which plaintiff resided. Thereafter heavy rains came. The accumulated earth was washed down and resulted in heavy damage to plaintiff's property. The present action was instituted for an injunction restraining the depositing of loose earth in a manner to endanger plaintiff's property, commanding the defendant to remove the deposits of loose dirt or to place adequate protecting structures around the same, also for the recovery of general damages in the sum of $100,000 and special damages in the sum of $8,212.29. The court found that to the time of trial, October 21, 1949, plaintiff had suffered damage in the sum of $2,732.29 due to the physical destruction of or injury to her property. The court also awarded damages of $24,000 based upon findings that through the actions of defendant the fair market value of plaintiff's property was reduced from $40,000 to $16,000. The judgment also commanded defendant to remove the deposits of loose dirt or to place protecting structures around the same in such manner as to adequately remove the danger to plaintiff's property. The court did not determine whether the condition was one that could be remedied and yet found there had been a permanent depreciation of the value of plaintiff's property. On the former appeal, the award of $2,732.29 damages for actual physical injury was affirmed. To the extent that the judgment awarded additional damages and also granted injunctive relief, it was reversed for the reason that plaintiff would not be entitled to damages consisting of the depreciation in the value of the property and at the same time an injunction requiring the defendant to remedy the condition. The court said (p. 270) : "On retrial the trial court should determine whether or not the nuisance is in fact permanent. If it finds that it is, it should enter judgment for the decrease in market value. If it finds that it is not, it should grant injunctive relief and such additional damages as may

be proved for the temporary decrease in the value of the use of the property while the nuisance continued. (See *Bourdieu* v. *Seaboard Oil Corp.*, 48 Cal.App.2d 429, 437-438 [119 P.2d 973]; *Guttinger* v. *Calaveras Cement Co.*, 105 Cal. App.2d 382, 387 [233 P.2d 914]; McCormick on Damages, § 127, pp. 503-504.) To the extent that it awards damages of $2,732.29, the judgment is affirmed. In all other respects the judgment is reversed and the cause is remanded to the trial court with instructions to determine on the basis of the evidence previously presented and such additional evidence as may be presented by the parties whether or not the nuisance is in fact permanent.'' The opinion of the Supreme Court as originally prepared ended with the word ''reversed'' in the last sentence above quoted. In response to plaintiff's petition for modification, the court added the remainder of the sentence as quoted.

Defendant contends that he was entitled to jury trial on the issue of damages as a matter of right. He asserts that in an action for injunction and damages such as this the damage issue is triable to a jury, citing *Moore* v. *San Vicente Lbr. Co.*, 175 Cal. 212 [165 P. 687]; *Pacific Western Oil Co.* v. *Bern Oil Co.*, 13 Cal.2d 60 [87 P.2d 1045], and other cases. Plaintiff does not question that defendant originally had a right to a jury trial of the damage issue. She contends, however, that the waiver in the first instance held over and was binding upon defendant in all the subsequent proceedings.

The parties disagree as to whether the judgment was reversed for a ''retrial'' or a trial de novo, or only for further proceedings for the determination of matters that were in issue but were not decided at the first trial.

The weight of authority appears to be that where a judgment has been reversed for a trial de novo, a party is not bound by his waiver of a jury at the first trial. (106 A.L.R. 203, 205.) One reason for this rule is that where a judgment has been reversed for a retrial, the cause stands as if it had never gone to trial and the parties are restored to their original positions and rights; another reason is that conditions may have arisen which at the time of the waiver were not within the contemplation of the party or parties who had waived jury trial. The contrary view is that a waiver holds over even after a reversal for a trial de novo. Numerous cases so holding are cited in American Law Reports Annotation, *supra*; still other cases, namely, *Raleigh Banking & Trust Co.* v. *Safety Transit Lines*, 200 N.C. 415 [157 S.E.

62] and *Park* v. *Mighell,* 7 Wash. 304 [35 P. 63], hold that where the cause is remanded on appeal for further proceedings and the determination of issues that could have been decided originally, a waiver of jury trail is binding as to the subsequent proceedings.

The question of the right to a jury trial was considered by the court in *Dickey* v. *Kuhn,* 125 Cal.App. 68 [13 P.2d 834], under the following circumstances. The first trial of the action was by the jury; at the second trial a jury was waived and the last trial had after reversal of the judgment in the second trial was before a jury upon demand of the defendant over the objection of plaintiff. The court held that it was within the discretion of the trial court to allow trial by jury and that there was no abuse of discretion. Petition for hearing by the Supreme Court was denied. It has been held that it is within the discretion of the court to relieve a party from the effect of waiver of a trial by jury (*Doll* v. *Anderson,* 27 Cal. 248, 251) and that it is not an abuse of discretion after a waiver by failure to deposit jury fees for the trial court to refuse to grant a continuance and permit a jury trial. (*Norland* v. *Gould,* 200 Cal. 706 [254 P. 560].) The precise question before us had not been decided in California.

Before the matter came on for hearing after the reversal, plaintiff, over the objection of defendant, filed a supplement to her amended complaint in which she alleged that her property had suffered a temporary decrease in value of use in the amount of $2,160 per year, or a total of $14,760 between May 15, 1946, when the loose dirt was first deposited, and March, 1953, when the amendment was filed. The prayer of the amendment was for damages of $14,760 and for such other and further relief as might seem just and proper in the premises. Prior to the taking of further evidence, plaintiff in open court conceded that in September, 1952, defendant had begun extensive operations to move the fills on his property down the slope nearer the floor of the canyon and to form, compact and stabilize the same with proper drainage so as to eliminate the danger of further flows of mud therefrom, and plaintiff then conceded that the threat of further injury had been substantially eliminated, that an injunction would not be necessary and that the only question remaining was one of damage consisting of dimunition of the value of the use of her property.

The instructions of the Supreme Court defined and limited

the further proceedings in the case. The issue of liability was not to be redetermined. That question was settled by the partial affirmance of the judgment for damages. Only the nature and amount of the relief to which plaintiff was entitled remained in question. If the nuisance could be abated, the damage would be the temporary decrease in the value of the use of the property while the nuisance continued. If it was found to be a permanent condition, the damage would consist of diminution of the market value of the property. These were issues which should have been determined originally.

It was implied in the instructions of the Supreme Court that the evidence already introduced would be considered by the trial judge who had heard it and was familiar with it. The trial court was required to follow the directions of the Supreme Court; it was without discretion or authority to do otherwise. Granting defendant's motion for a jury trial and recalling all the witnesses who had testified to substantially repeat their testimony or reading their testimony to the jury in connection with other evidence that had been given or that might be given would not have been consistent with the directions of the Supreme Court.

It may be that when defendant waived trial by jury he did not anticipate that if liabiltiy should be established plaintiff might ultimately recover on the basis of diminution of rental value of the property while the injurious condition continued, but we do not regard this as a sufficient reason for relieving him of the waiver. If the trial court on motion for a new trial had discovered its error and had granted a limited retrial for the purpose of adjudicating issues that had not been determined, or if after the evidence was closed the trial had been reopened for evidence as to the permanency of the nuisance, it could scarcely have been contended by the defendant that in the further proceedings he was not bound by his waiver of a jury. We see no substantial difference between the proceedings that were had pursuant to the mandate of the Supreme Court and proceedings that would have been had if the trial court of its own volition had reopened the case or had vacated its findings and judgment in part and had proceeded to determine the questions which it eventually did determine pursuant to the directions of the Supreme Court. It was not error to refuse the request for a jury trial.

The remaining points relate to the award of damages and

they are (1) no nuisance existed subsequent to the issuance of the injunction up to the rainy season of 1952, (2) the rains of January and March 1952 caused only a temporary loss of rental value, (3) there was insufficient evidence of the loss of rental value, (4) there was overwhelming evidence that there was no diminution of rental value, and (5) defendant occupied the property during the period in question, she lost no money and could recover only for discomfort, inconvenience and annoyance, no evidence thereof being introduced.

The court made findings as follows.[1,2]

Defendant says that plaintiff's property was adequately protected by the injunction and that there was no physical injury to her property. He refers to certain of his own testimony but does not state the evidence which was relevant to the findings we have quoted. The court found that in September, 1952 defendant caused extensive work to be done to establish new fills and drainage facilities which substantially eliminated the threat and danger of damage to plaintiff's property. We shall, therefore, deem the evidence to have been sufficient to justify the finding that until the corrective work was done between September, 1952 and March, 1953 as found by the court, conditions existed upon defendant's property which constituted a continuous menace to the land and residence of plaintiff and to her safety and a continuous threat of flows of earth and debris to and upon her property.

The finding as to the diminution of rental value coincided with the testimony of plaintiff's witness Curzon. He valued the property as of a date prior to defendant's operations at $40,000 and during the period of the existence of

---

[1] "It is true that from time to time in and after periods of rainfall during the period from November, 1946 through the year 1952, loose mud, earth, and debris negligently and carelessly deposited by defendant Cameron on his said land as aforesaid flowed down the slope on his said land into the canyon adjoining plaintiff's property, and into the street in front of plaintiff's property, and encroached upon plaintiff's property. It is true that in March, 1952 a large amount of said loose mud, earth and debris from defendant's property flowed on to plaintiff's property to a depth of 18 inches, blocking the back entrance to plaintiff's property.

[2] "It is true that during the period from May 16, 1946 to about September, 1952 the many tons of loose earth, dirt and debris deposited and caused to be deposited by defendant Cameron on his land as aforesaid, continued to remain upon the slopes of defendant's property in the form of loose uncompacted fills of earth, dirt and debris lying without support in a position dangerous to the land, residence and safety of plaintiff, constituting a continuous menace and threat to the land, residence, and safety of plaintiff and a continuous threat of the repetition of such flows of mud, earth, and debris upon plaintiff's property."

the nuisance at $16,000. He fixed the rental value at 12 per cent gross per year of the market value or 9 per cent net. Upon this basis the rental value was diminished $2,160 per year or a total during the continuation of the nuisance, according to the estimates of Curzon, in the amount of $14,853. Defendant does not contend that Mr. Curzon employed an unsound method for the computation of rental value. It is contended, however, that he did not make an independent valuation but accepted valuations of the property given by another expert witness in the initial trial. This is an assumption which finds no substantiation in the record. Curzon's valuation merely coincided with the testimony of the other witnesses and the previous finding of the court as to the valuations both before and after the creation of the nuisance. Defendant says the valuation of $16,000 during the continuation of the nuisance was contrary to the sworn valuation of $35,000 placed upon the property by Mrs. Spaulding in 1951 in an affidavit filed in a suit for divorce. Five witnesses testified for defendant as to the market value and rental value of the property. Their estimates of market value as of 1946 ranged from $24,000 to $28,000 and their estimates of rental value at from $125 to $200 per month in 1946 and from $125 to $225 per month in 1953. Mr. Curzon was shown to be an experience and competent appraiser. There was also before the court evidence of valuations theretofore given by another expert which the court had deemed reliable and satisfactory. The contention that the court's finding as to diminution of the market value upon which the finding of loss of rental value was based was unsupported by substantial evidence cannot prevail. After viewing the many photographs of the property that were in evidence it is not difficult to understand that the court considered more credible the valuations of Mr. Curzon than the valuations of defendant's expert witnesses. The latter were of the opinion that the existence of the nuisance caused no diminution of market value or rental value. The trial judge visited the property and was evidently satisfied from what he saw that plaintiff's property was in a perilous position while it remained unprotected from the danger of the condition which existed until sometime between September, 1952 and March, 1953. Vast quantities of earth had been dumped into the head of draws high above the plaintiff's property. It was inevitable that during periods of rainfall the earth on the steep, loose slopes would be washed down into the draws.

■ We thus come to a consideration of defendant's final contention that plaintiff sustained no loss of rental value. That contention is twofold. First it is argued that there was overwhelming evidence that the rental value was not affected at all by the existence of the nuisance. The opinions expressed to this effect by defendant's experts were manifestly unsound. Plaintiff's property had been deluged by the flow of mud, stones and debris. It was substantially unprotected against further disaster of a similar nature. Evidence of erosion on the slopes was in plain sight. It would have been obvious to any one contemplating occupancy of the premises that there was at least a threat of a reoccurrence of former conditions. No reason appears for questioning the judgment of the trial judge in rejecting the opinions of defendant's experts with respect to market and rental value.

■ The second phase of the argument is that since plaintiff lived in the premises during the period in question she cannot claim damages for impairment of the rental value. It is argued that her only detriment would have consisted of annoyance, discomfort and mental distress, for which she made no claim. Cases cited in support of this proposition, *Racine* v. *Catholic Bishop of Chicago*, 290 Ill.App. 284 [8 N.E.2d 210]; *Oklahoma City* v. *Dyer*, 177 Okla. 620 [61 P.2d 660], and *Herzog* v. *Grosso*, 41 Cal.2d 219 [259 P.2d 429], do not hold that damages for discomfort, annoyance and mental distress suffered by an occupant of property by reason of existence of a nuisance constitute the exclusive basis of compensation. Such damages are recoverable, but not as an alternative to damages consisting of diminution of rental value. Carried to an extreme defendant's argument would mean that if the dwelling had been rendered wholly uninhabitable and if plaintiff had chosen to live in the backyard in a tent she would have suffered no damage through loss of rental value of the property. Although she remained in the house, her loss was a real one; if the rental value was diminished at the rate of $2,160 per year while the nuisance existed, the value of the use of the premises to plaintiff while she occupied them was likewise diminished.

The judgment is affirmed.

Wood (Parker), J., and Vallée, J., concurred.

Appellant's petition for a hearing by the Supreme Court was denied November 24, 1954.