367 So.2d 232 (1979)
MODINE MANUFACTURING COMPANY, Appellant,
v.
ABC RADIATOR, INC., Appellee.
MODINE MANUFACTURING COMPANY, Appellant,
v.
BLIZZARD DIAGNOSTIC SYSTEMS, INC., Appellee.
Nos. 77-1548, 77-1549.
District Court of Appeal of Florida, Third District.
January 16, 1979.
Rehearing Denied February 28, 1979.
*233 Daniels & Hicks and Sam Daniels, Mark Hicks, Blackwell, Walker, Gray, Powers, Flick & Hoehl and James E. Tribble, Miami, for appellant.
Dubbin, Schiff, Berkman & Dubbin, Susan Goldman, Podhurst, Orseck & Parks and Walter H. Beckham, Jr., Miami, for appellees.
Before PEARSON and HUBBART, JJ., and CHARLES CARROLL (Ret.), Associate Judge.
PEARSON, Judge.
Plaintiff-counterdefendant Modine Manufacturing Company brings these consolidated appeals from a final judgment on a counterclaim, entered upon jury verdicts, awarding to the defendants-counterplaintiffs ABC Radiator, Inc., and Blizzard Diagnostic Systems, Inc., the appellees, extensive compensatory and punitive damages. The counterclaim was filed upon leave of the trial court following an appeal to this court, which affirmed in part, reversed in part and remanded with directions. To understand this present appeal, we will discuss this cause from its beginning.
On February 4, 1972, appellant Modine Manufacturing Company filed a complaint in replevin against the appellees, ABC Radiator, Inc., and Blizzard Diagnostic Systems, Inc. The non-jury action went to court on the issue of the right to possession of replevied merchandise, i.e., 1,544 radiators, and on June 7, 1973, resulted in a final judgment in replevin in favor of ABC and Blizzard, or in the alternative, a money judgment in their favor in the event they elected not to accept the return of the replevied goods. Modine's post-judgment petition for rehearing or, alternatively, motion for new trial was denied. On August 6, 1973, Modine appealed to this court. This resulted in a partial affirmance, see Modine Manufacturing Company v. Israel, 294 So.2d 369 (Fla. 3d DCA 1974), in which this court said, in part:
"This appeal is from judgments for the defendants after a trial before the court without jury in an action for replevin. The plaintiff-appellant urges: (1) that the evidence was not sufficient to support the finding that the appellees had the right of possession, and (2) that the money judgments were erroneous in that the amount assessed as the value of the property is not supported by the record. We affirm upon the first point and reverse upon the second.
"The plaintiff-appellant was the seller of the goods sought to be replevied. There was evidence before the court upon which the court determined that the goods were sold upon credit and that the agreed period for payment had not expired.
* * * * * *

*234 "The award of $39,805.65 to ABC and $6,773.41 to Blizzard, which represents the value of the goods at the time that they were replevied, cannot be sustained since neither appellee has ever paid for the goods. The record shows that each of the defendants has elected to take the money judgment.
* * * * * *
"The judgment appealed is affirmed in part and reversed in part and the cause is remanded for a trial to determine the value of the defendants' special equity in the goods replevied."
Modine, thereafter, petitioned to the Florida Supreme Court for writ of certiorari. This petition was denied at 303 So.2d 644 (Fla. 1974).
Upon remand, ABC and Blizzard sought leave on May 7, 1975, to file a counterclaim, asserting a cause of action for compensatory and exemplary damages for wrongful replevin. Modine opposed the motion, which was granted, and the counterclaim was filed on July 2, 1975. Modine filed a reply on July 11, 1975, and on January 12, 1976, the trial court denied Modine's motion to strike the counterclaim, determining that the issue of damages for wrongful replevin had not been litigated in the original replevin action and, therefore, could be litigated under the counterclaim or in a separate plenary action.
In February of 1976, Modine filed in this court a "Motion to Require Compliance with this Court's Opinion and Mandate." The motion was denied without opinion. A petition for writ of certiorari was thereafter denied in the Florida Supreme Court.
Subsequently, following replies to the counterclaim, a five-day jury trial commenced on March 28, 1977, from which verdicts were rendered in favor of ABC and Blizzard for both compensatory and punitive damages. From the judgments entered thereon, Modine has appealed.
The series of events leading up to the February, 1972, replevin began with the developing and designing of a new concept of marketing radiators by ABC and by Blizzard. It was the intention of the appellees to use this marketing concept on a large scale through a national program with the Sears chain of stores. The Modine radiator which had a design that could fit five or six automobile models and which was lower priced than other radiators was the radiator that the appellees planned to use in the contemplated national marketing program with Sears. ABC was already a Modine distributor and its majority stockholder, Leonard Kaye, approached Robert Simm of Modine in 1970 and discussed with him Blizzard's potential mass merchandising program through Sears. Kaye advised the Modine management that he enjoyed a good relationship with Sears and if Modine would assure continuous radiator supply, Kaye eventually could generate his program nationwide. Because of Blizzard's expertise in the aftermarket radiator field, Modine was extremely interested. Pursuant to a January 8, 1971, letter agreement from Modine, assuring Blizzard of a continuous supply of radiators for the Sears program, Blizzard sought to activate its plan to obtain a national contract with Sears. Sears was enthusiastic about Blizzard's national radiator program, but its one concern involved the assurance of an uninterrupted source of Modine radiators. Once Sears was assured of Modine's complete knowledge of the Blizzard program and of the fact that there would be no shortages of radiators, the Blizzard program was implemented, mainly in the south Florida area, and proved to be successful. As a result, permission was obtained from Sears to proceed in nine states. Sears also gave indications to Blizzard that it planned to take the program nationwide.
The appellees argue that Modine, because of its optimistic national sales projections for the Blizzard-Sears program and because of its awareness of the actual success of the early stages of the program, began to think about changing its relationship with Blizzard so that it (Modine) would control the program. It is further argued that Modine decided upon an attempt to convert Blizzard into a manufacturers' representative and that a proposed agreement based thereon *235 was forwarded to Blizzard in October, 1971, but was rejected.
The appellees argue that this new strategy on the part of Modine led to a wrongful replevin of 1,544 radiators on February 4, 1972, and that as a direct result thereof, both ABC and Blizzard were unable to ship their orders and Blizzard, therefore, lost the Sears national program. On March 10, 1972, Sears formally notified Blizzard that the Blizzard program for Sears's southern territory, as well as the proposed national Sears program, had been discontinued because of the serious problem that had arisen between Modine and Blizzard, that is, the February 4th replevin.
Following the replevin, the appellees had to pay a fifth to a quarter more for Modine radiators, and because of the increased cost and freight charges, it was not feasible for either appellee to operate its business outside the Miami area. Also, the appellees argue that ABC was unable to ship Modine radiators to two other customers from whom substantial orders had been negotiated following a national convention of bumper manufacturers in San Antonio, Texas.
The jury returned a verdict for Blizzard of $5,000,000 compensatory damages and $18,268.10 in punitive damages and a verdict for ABC of $106,000 compensatory damages and $21,838.67 punitive damages.
In its main brief, the appellant sums up the net result of the trial as follows:
"The net result of the trial below was that Modine was ordered to pay $5,106,000.00 compensatory damages because it replevied radiators valued at $46,000.00, for which it had not been paid."
* * * * * *
Thus, the fundamental question presented is whether upon affirmance of a judgment for the defendants in a replevin action and a remand "... for a trial to determine the value of the defendants' special equity in the goods replevied," the trial court may permit the filing of a defendants' counterclaim for damages upon a claim that the replevin was a part of an independent tort, i.e., wrongful interference with defendants' business contracts. We hold that the trial court has departed from the directions of the mandate and tried a new and different cause of action.
At the outset, we must consider whether this court established the law of the case when it denied Modine's extraordinary motion to require compliance with the mandate. Our present holding may be said to be inconsistent with a refusal to determine that the counterclaim was improper at the time it was filed. That inconsistency does not follow when the denied extraordinary motion is viewed in its true context. An appellate court will not ordinarily interfere by extraordinary writ with the actions of a trial court when the trial court's orders are reviewable upon appeal. See Noble v. McNeal, 179 So.2d 126 (Fla. 1st DCA 1965). It follows that the denial of the motion to require compliance with the mandate was not a ruling upon the merits of Modine's claim that the counterclaim was outside the directions of this court on the remand. The denial of the motion may well have been based upon a determination of the insufficiency of the motion or a determination that the interference with the trial court at the pleading stage was not warranted where there was a remedy by appeal. Cf. Allen v. City of Miami, 147 So.2d 566 (Fla. 3d DCA 1962); and Schayer & Co. v. Board of County Commissioners, 188 So.2d 871 (Fla. 3d DCA 1966).
In any event, the Supreme Court of Florida has held in Beverly Beach Properties v. Nelson, 68 So.2d 604, 608 (1953):
* * * * * *
"We may change `the law of the case' at any time before we lose jurisdiction of a cause and will never hesitate to do so if we become convinced, as we are in this instance, that our original pronouncement of the law was erroneous and such ruling resulted in manifest injustice. In such a situation a court of justice should never adopt a pertinacious attitude."
In response to the appellant's point that the trial of the new and independent cause of action constituted a departure from the *236 decision of this court upon the first appeal, the appellees urge that the order of the trial court allowing the counterclaim in the replevin action was within the broad discretion of the trial judge. The general rule is that the judgment of an appellate court, where it issues a mandate, is a final judgment and compliance therewith by the trial court is a purely ministerial act requiring the consent of the reviewing court permitting the presentation of new matter affecting the cause. O.P. Corporation v. Village of North Palm Beach, 302 So.2d 130 (Fla. 1974)[1]; see also State ex rel. Dowling Co. v. Parks, 99 Fla. 1264, 128 So. 837 (1930); Rinker Materials Corporation v. Holloway Materials Corporation, 175 So.2d 564 (Fla. 2d DCA 1965), and Estate of Maxcy, 280 So.2d 10 (Fla. 2d DCA 1973).
The question is presented: Do the circumstances of this case warrant an exception to the rule? We hold that they do not. The route taken by the trial court on remand completely changed the nature of the case. On the first appeal, we had before us a case of the replevy of personal property only. The trial had been before the court without a jury because a jury trial was not demanded. The permitted counterclaim abandoned all claims as to the value of the property and proceeded upon a claim of damages by abuse of process in which the appellees claimed a conspiracy to destroy appellees' business. A jury trial was demanded and was held on the new pleadings. It seems clear from decisions in this and other jurisdictions that when a non-jury matter is remanded for a partial retrial of a limited issue, a jury trial cannot be demanded upon remand. See Burleigh House Condominium, Inc. v. Buchwald, 328 So.2d 554 (Fla. 3d DCA 1976); and Spaulding v. Cameron, 127 Cal. App.2d 698, 274 P.2d 177 (1954). Our decision is not based upon the fact that there was a jury trial, but rather is intended as an illustration of the complete departure from the mandate.
The appellant argues convincingly that the record fails to establish that the replevin of 1,544 radiators worth $46,000.00 caused ABC and Blizzard to lose future profits of a twenty-five year contract of a present value of $5,106,000.00. The awards on the counterclaim simply exceed reason and should have been set aside by the trial court. See New Amsterdam Casualty Co. v. Utility Battery Mfg. Co., 122 Fla. 718, 166 So. 856 (1935). But this error would require only a new trial. Our reversal here is based upon those cases supporting the proposition that a trial court, upon a limited remand to determine the value of goods replevied, may not try another matter.
Accordingly, the judgments are reversed and the cause remanded for the purposes set out in our mandate of May 31, 1974.
Reversed and remanded.
NOTES
[1] This rule has been relaxed by the Supreme Court in the instance of proceedings under Florida Rule of Civil Procedure 1.540. See Ohio Casualty Group v. Parrish, 350 So.2d 466 (Fla. 1977).