# IN THE COURT OF APPEALS OF TENNESSEE
## AT NASHVILLE

## GEORGE PRYOR, ET AL. v. TIM WILLOUGHBY, ET AL.

**Direct Appeal from the Chancery Court for Wilson County**
**No. 96357     C.K. Smith, Chancellor**

_____

**No. M1999-00668-COA-R3-CV - Decided April 26, 2000**

_____

This case involves the proper measure of damages on a nuisance claim. The trial court awarded the plaintiffs damages for the cost of restoring their property to the condition it was in before the defendants' negligence caused their septic system to back up and overflow into their house. The court also awarded them damages for discomfort, inconvenience, embarrassment and emotional distress. The plaintiffs filed a motion to alter or amend the judgment, arguing that they were entitled to additional damages, measured by the decline in the rental value of their property during the time that the nuisance persisted. The trial court denied the motion because the plaintiffs never rented out their house, but continued to reside in it despite the existence of the nuisance. We find that the plaintiffs are entitled to compensation for the loss of use and enjoyment of their property, measured by the decline in its rental value, and we accordingly reverse the trial court.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Chancery Court Reversed and Remanded.**

CANTRELL, P.J., M.S., delivered the opinion of the court, in which KOCH and COTTRELL, JJ. joined.

Philip Elbert and Kendra Samson, Nashville, Tennessee, for the appellants, George Pryor and Sharon Pryor.

Michael Mills and Bryan Smith, Brentwood, Tennessee, for the appellees, Tim Willoughby and Jane Willoughby.

## OPINION

### I.

In September of 1990, George Pryor and his wife Sharon purchased a home at 1809 Lake Meadow Trail in Mount Juliet. In 1994, Tim Willoughby and his wife Jane purchased the adjoining lot at 1811 Lake Meadow Trail. In the summer of 1995, the Willoughbys began construction of a new house on the property.

As part of the construction, the Willoughbys altered the pre-existing grade of their lot. Rainwater had previously drained off the Pryors' lot across the Willoughbys' lot, and into a culvert. The new grading changed the natural drainage of the land, and caused substantial quantities of rainwater to collect on the Pryors' front lawn, and to remain there for days at a time.

This pooling of water was directly above the Pryors' septic tank. On April 29, 1996, Mrs. Pryor was doing laundry when she heard water gurgling in a sink. She went into the master bathroom, where she saw that sewage water was pouring out of the drains in the shower stall and bathtub, and out of the toilets. To prevent a recurrence of such an event, the Pryors had to have their septic tank and field lines uncovered, and the septic tank pumped. Thereafter, they had to leave the lid of the septic tank off.

George Pryor asked Tim Willoughby to meet with him and with a plumber to discuss the problem. After the meeting, Mr. Willoughby said he was going to turn it over to Allstate, his insurance carrier. The Pryors claim that the Willoughbys made no other effort to correct the drainage problem they created, despite the fact that their next door neighbors had an open septic tank in their front yard as a result of their conduct.

Sharon Pryor testified as to the odors coming from the open septic tank, the alteration of her normal habits of water usage for fear of worsening the problem, and the impossibility of entertaining friends in the Pryor home. She was asked to describe an attempt to use the home for a family reunion on Christmas of 1996:

"How can I explain it? It was the first time in 12 years that we had all of our children together and grandchildren and we were looking to get a family portrait done, and you get up the morning after Christmas, after finally finding a photographer that will do it, and then no one can take showers, no one can go to the bathroom, you're stopping at a gas station or whatever, trying to go to the bathroom and make do."

On June 28, 1996, the Pryors' attorney sent a letter to the Allstate Claims Representative, demanding prompt remedial action. Such action was not forthcoming, and on September 3, 1996, the Pryors filed their complaint for nuisance and trespass. This finally had the desired effect, and the Willoughbys corrected the drainage problem in December of 1996.

By that time, the soil in the Pryors' yard had become so saturated from the water that they had to install new field lines and a septic pump. Those repairs could not be completed and the plaintiffs' septic system could not be permanently closed, until March of 1997, because of the weather.

The trial of this case was conducted on September 14, 1998. At the conclusion of the proof, the trial judge found that the actions of the defendants constituted a nuisance and a trespass on the plaintiffs' property. The trial court entered its judgment on October 6, 1998, finding that the

plaintiffs were entitled to recover the expenses they incurred to correct the damage that their property had suffered as a result of the defendants' wrongful interference with the natural drainage of surface water. The court also found that the plaintiffs had suffered discomfort, inconvenience, embarrassment and emotional distress, because of the defendants' conduct, and awarded them $2,500 for those damages. The total judgment award was $17,040.61 plus costs.

On November 2, 1998, the Pryors filed a motion to alter or amend the judgment, to include damages for the lost rental value of their property during the period of the nuisance. On May 17, 1999, the trial court entered an order denying the motion to alter or amend, but awarding the plaintiffs discretionary costs in the amount of $1,005.15, pursuant to Tenn. R. Civ. P. 54.04(2). The Pryors subsequently appealed.

## II.

The court's judgment of October 6, 1998 included the following finding:

> 13. Because they continued to reside in the residence during the period of the nuisance and trespass, the Court finds the Plaintiffs are not entitled to damages for the decrease in rental value of their property during the existence of the nuisance and trespass.

The appellants correctly point out that this is not an accurate statement of the law. A party that has been subjected to a nuisance may be entitled to several types of damages. These damages may include the cost of restoring the plaintiff's property to its condition prior to the creation of the nuisance, personal damages such as inconvenience and emotional distress, and injury to the use and enjoyment of her property. Such damages are not mutually exclusive. *See Citizens Real Estate v. Mountain States Development Corporation*, 633 S.W.2d, 763, 767 (Tenn. Ct. App. 1981).

A temporary nuisance is one that can be corrected by the expenditure of labor and money. *Caldwell v. Knox Concrete Products, Inc.*, 391 S.W.2d 5, 11 (Tenn. Ct. App. 1964). In cases of temporary nuisance, the normal way to measure injury to the use and enjoyment of property is the decrease in rental value of the property while the nuisance exists. *See Pate v. City of Martin*, 614 S.W.2d 46, 48 (Tenn. 1981); *Citizens Real Estate v. Mountain States Development Corporation*, 633 S.W.2d, 763, 767 (Tenn. Ct. App. 1981).[1]

In such a situation, a plaintiff is not being compensated for not receiving rents that she would

---

[1] Appellees point out that Tennessee courts have used other measures to value the injury to use and enjoyment of property, and cite to us the case of *Anthony v. Construction Products, Inc.*, 577 S.W.2d 4 (Tenn. Ct. App. 1984). In that case, damages for a nuisance that interfered with the operation of a convenience store were appropriately measured by the profits that were lost during the persistence of the nuisance. In the case of residential property, however, the most reliable measure will generally be the decrease in rental value.

otherwise have been able to collect, but because she was unable to use or enjoy her property in a manner commensurate with its pre-nuisance value. It therefore follows that property owners cannot be disqualified from an award of damages measured by the decrease in the rental value of their property, simply because they continue to live on it despite the nuisance.

While we know of no Tennessee case that has dealt with the question directly, appellants have directed our attention to two nuisance cases from other jurisdictions which have specifically held that continued residence on one's own property throughout a period of nuisance does not bar a plaintiff from collecting damages based on reduction in its rental value. Those cases are *Miller v. Town of Ankeny*, 114 N.W.2d 910 (Ia. 1962), which deals with odors from a sewage treatment plant adjoining the plaintiff's farm, and *Spaulding v. Cameron*, 274 P.2d 177 (Ca. App. 1954), which deals with potential mudslides from the disturbance of dirt above the plaintiff's property. We approve the reasoning of those cases.

Sharon Pryor worked as a realtor. At trial she was asked what a home like hers would normally rent for if the septic system were working normally. Ms. Pryor noted that the house had over 3500 square feet and a full basement, and stated that in that neighborhood, it would bring anywhere from $2,000 to $2,200 per month in rent. She was then asked, "[a]s a realtor, do you think there was any way you could have rented that house with the septic tank not working and the sewage going in the front yard?" She answered "No."

While Mrs. Pryor's response could support a conclusion that the rental value of the property was reduced to zero, we believe the better interpretation to be that the septic problems had reduced its value to a de minimus level. In reversing the trial court, we therefore grant the appellants a judgment of $20,000 for the loss of rental value of their property during the period of the nuisance. This judgment is in addition to the amounts awarded the plaintiffs by the trial court. Post-judgment interest will accrue on the $20,000 from the date this opinion is filed. See Rule 41, Tenn. R. App. P.

### III.

The trial court's order denying the plaintiffs' motion to alter or amend is reversed. Remand this cause to the Chancery Court of Wilson County for further proceedings consistent with this opinion. Tax the costs on appeal to the appellees.