NEW AMSTERDAM CASUALTY COMPANY and C. E. YOCAM
v. UTILITY BATTERY MANUFACTURING COMPANY.

166 So. 856.
Opinion Filed December 27, 1935.
On Rehearing March 3, 1936.

*Claibourne M. Phipps,* for Plaintiff in Error;

*Mabry, Reaves, Carlton & White,* for Defendant in Error.

BROWN, J.—This is a suit on a bond given by the complainant in a suit for receivership, accounting, etc., to obtain, or make effective, the appointment by the Circuit Court of a receiver of the Utility Battery Manufacturing Company, a corporation, the New Amsterdam Casualty Company being a surety on the bond.

C. E. Yocam and wife filed a bill of complaint against the Utility Battery Manufacturing Company, Arnold S. Kirkeby, E. O. Kirkeby and H. D. Wentworth, charging violation of a contract between Yocam and the Kirkebys with reference to said Company, misappropriation of company funds by the Kirkebys, mismanagement of its affairs, and various other acts of misconduct on the part of the Kirkebys. The bill prayed for an accounting, that the Kirkebys be required to reimburse the company for funds misappropriated and properties misused and also to pay certain amounts which it was alleged that they had agreed to pay. The bill prayed for the appointment of a receiver to take charge of said company. It also alleged that de-

fendant Wentworth was an officer and director of the company and had concurred in the improper acts alleged against the Kirkebys. (This latter charge was later refuted by the testimony of Yocam himself on the hearing.)

On application of complainants an order was entered on June 13, 1931, appointing a receiver for said company upon the complainant's entering into a bond in the sum of $5,-000.00 conditioned to pay the company any loss or damage it might sustain should the court upon a further hearing decree that the appointment of such receiver was not warranted and said bill be dismissed. The bond was executed on June 15, 1931, was approved, and the appointment of the receiver thereupon became effective. The receiver took charge of said business on the same date. The defendants filed a joint and several answer denying the material allegations of the bill and incorporating therein a demurrer. The answer was signed by all the defendants and by Mabry, Reaves & White as solicitors for defendants.

The cause was brought on promptly for hearing. After a hearing lasting some five days, a final decree was entered in favor of the defendants, on July 2, 1931, seventeen days after the receiver had taken charge of the Battery Company's property and business. The decree dismissed the bill and discharged the receiver, whereupon the receiver surrendered control of the business to the officers of the company, filing his report as receiver a few days later.

Thereafter, on September 29, 1931, the Utility Battery Manufacturing Company filed a suit against Yocam and the New Amsterdam Casualty Company, as surety on said bond, alleging the execution of the bond, the breach of its condition, and claiming that it had sustained various damages on account of the appointment of such receiver, in the total sum of $5,000.00. A few days thereafter, an amended

declaration was filed, to which the Casualty Company filed a demurrer and motion for compulsory amendment, both of which were overruled. The Casualty Company then filed certain pleas specifically traversing various allegations of plaintiff's amended declaration, and also pleas alleging that the receiver was appointed in a suit which involved issues and alleged and prayed the right to various and sundry relief other than the appointment of a receiver, and that the appointment of a receiver was merely ancillary to the principal relief sought in the suit, and that any services rendered by attorneys and auditors were rendered in and about the principal defense of the suit and not because of or in connection with the ancillary appointment of a receiver therein. The plaintiff demurred to the pleas upon various grounds. Among other grounds, the demurrer made the following points:

(1) That the pleas are not in bar of the matters and things averred in the declaration, but relate solely to the question of damages, and that the facts therein averred, so far as provable at all, may be shown in evidence, even in the absence of a plea.

(2) That the said pleas do not traverse the facts averred generally, or traverse separately any material allegation in the declaration.

(3) That the pleas seek to make an issue of the *amount* of complainant's recovery as distinguished from its *right* of recovery.

As additional grounds to the seventh and eighth pleas the demurrer says that it affirmatively appears from said pleas (to which a copy of the bill of complaint was attached) that the appointment of a receiver by the court in the cause in which the bond was given was not merely ancillary, but on the contrary, was the relief and the means of securing

the relief prayed for in said suit; that it affirmatively appeared that the receivership was a primary feature and an inseparable part of said suit.

The court sustained the demurrer to the pleas and granted a motion to strike the same, but allowed additional time to file amended pleas. The Casualty Company having failed to plead further, the court later entered a default judgment against said company for failure to plead. A default had been entered against defendant Yocam previously.

The case came on for trial before a jury on November 3, 1932, on the question of damages, and a verdict in favor of the plaintiff in the sum of $2,500.00 was rendered and judgment entered thereon, to which judgment writ of error was taken.

Upon the trial of the case, the court permitted the New Amsterdam Casualty Company to make, as against the evidence introduced by the plaintiff, all the points concerning the recoverability of the various elements of damage which had been attempted to be set up in the pleas filed by the Casualty Company. In our opinion there was no error in the action of the trial court in sustaining the demurrers to said special pleas, but it is hardly necessary for us to rule on those points, because if there was any error, it was error without injury.

Upon the conclusion of plaintiff's case, the Casualty Company moved to strike all testimony as to attorney's fees, for the reason that they were not rendered in connection with the dissolution of the receivership as distinguished from the defense of the case on its merits, and further because it appeared that services were rendered indiscriminately to four defendants and consequently could not be charged against it as surety. The court denied this motion. We do not think there was any error in this ruling. The plaintiffs had

introduced evidence in the trial tending to show that the only defendant who employed counsel in the case was the Utility Battery Manufacturing Company. While Attorney Wentworth had a share of stock in the Battery Company and was one of its officers, and was made a defendant in the case, this did not require him to render legal services to the company in the receivership case without compensation. He testified that the company agreed to pay him $250.00 and Mabry, Reaves & White $1,000.00 for their services in representing the Utility Battery Company and seeking to get it out of the hands of the receiver. The testimony as to the work which the attorneys did in this case was quite full and the value of the work was testified to, and we hold that the court committed no error in permitting this evidence to go to the jury. It was a question for the jury to determine under all the evidence what proportion of these attorney's fees was properly to be considered as damages recoverable for breach of the bond.

Plaintiffs placed reputable members of the bar of Hillsborough County upon the stand and their testimony was to the effect that in their opinion $1,000.00 was a reasonable attorney's fee to be charged the corporation for procuring the discharge of the receiver. Counsel for defendant in error concede that amount would be the recoverable limit as to that particular element of the damages. It is true that in this case there was no separate hearing on motion to discharge the receiver, but the testimony shows that counsel for the Battery Manufacturing Company prepared a motion to discharge the receiver and took the motion before the Circuit Judge, in the presence of opposing counsel, for the purpose of getting a date set for hearing, and that the Circuit Judge suggested that instead of a separate hearing touching the question of whether the receiver should be con-

tinued, the matter should be considered on final hearing, inasmuch as the receivership aspect involved the whole case; and a final hearing was thereafter promptly had. The final decree, which was rendered by the late Judge Robles, and which was introduced in evidence, found that the complainants had failed to prove the material averments of the bill of complaint, and decreed that the appointment of the receiver was not warranted, and that the bill should be, and was, dismissed. There can be no doubt that one of the main objects of the bill, if not *the* main object, was to throw the corporation into the hands of a receiver.

It is not denied that the bond sued on in this case was given, and that the condition of the bond was broken, thus entitling the plaintiff to recover such damages as it sustained by virtue of the appointment of the receiver *pendente lite*. Counsel for plaintiff in error admit this and that the defense merely involved the question of what damages were recoverable and the amount thereof. Undoubtedly, the damages properly recoverable on a bond of this kind are limited to those damages sustained by the defendant in error as the actual, natural and proximate result of the unwarranted appointment of the receiver, and which it would not have sustained if a receiver had not been appointed. This is the contention of the plaintiff in error and with that contention we agree. Counsel for plaintiff in error in his very frank and able brief, admits that there are practically no cases specifically bearing upon damages arising from the appointment of a receiver *pendente lite*.

However, he contends that the situation is analogous to damages from the granting of a temporary injunction or restraining order, as to which he cites a number of cases, and also cites 14 R. C. L. 482, 32 C. J. 464. He admits that this Court in Bailey v. Haymans, 73 Fla. 1191, 76 So. 135

held that attorney's fees may be recovered on an injunction bond where there was no separate hearing on the injunction, the injunction having been dissolved upon final hearing, but points out that in that case an injunction was the only relief sought, and that this same situation existed in Sewell v. Huffsteler, 83 Fla. 629, 93 So. 162. But counsel contends that with the possible exception of one State it has never been held that attorney's fees incurred for the general defense of a suit may be recovered on an injunction bond where any relief other than an injunction is sought; that the great majority of cases hold, with practically no dissent, that in order for attorney's fees to be recovered upon an injunction bond where there is no separate proceeding with reference thereto, the injunction must be the only relief sought. On the other hand, counsel for the defendant in error contend that the line of authorities upon which opposing counsel relies hold that where the appointment of a receiver or the granting of an injunction is *incidental only* to the main question in the action, attorney's fees for services rendered in the main suit are not recoverable against the injunction or receivership bond. Without taking the time to ourselves analyze the various cases cited by counsel for the respective parties, we hold that where, as here, the receivership was inseparable from relief sought by the bill and the receivership was the indispensable medium through and by which to receive the relief prayed, the defendant can recover as damages in a suit on the bond given to obtain the appointment of the receiver such proportion of attorney's fees as were reasonably and properly incurred by the defendant in procuring a decree discharging the receiver, although such decree also disposes of the case on its merits.

In the Sewell case, the court denied a motion to dissolve

the injunction and then on final hearing dissolved it. The court held the bond liable nevertheless.

Under the facts of this case, we think it would be unjust to hold that the Utility Battery Manufacturing Company could not recover on the bond any part of the attorney's fees which it had incurred in its efforts to get the receivership dissolved merely because the court preferred to dispose, not only of that question, but of the merits of the case as a whole, on one hearing.

Plaintiff in error contends that the court erred in admitting certain evidence concerning the reduction in the gross sales of batteries, and the supposed loss of profits, after the receivership. The court permitted the witness Kirkeby to testify that the batteries of the company were sold under a time guarantee, and that during the twelve months preceding the receivership the company sold 8,458 batteries, whereas during the next twelve months during and after the receivership, the company sold only 4,107 batteries; that the company exerted the same effort with reference to sales that it had before; that the reduction of sales had a material effect upon the profits of the business; that a gross profit of $1.05 per battery was usual and was calculated on, and from that would be deducted fixed overhead expenses, and that during the twelve months following the receivership the company lost a probable profit of $1.05 per battery, which made a decrease of $4,500.00 in the profits of the company, and that the company lost a lot of their customers after the receivership.

There was no evidence from which it could be clearly inferred that the decreased sale of said batteries was due entirely to the receivership; nor does the evidence show that the result of the receivership extended for a period of one year and no more and no less. No reason is apparent from

the record for the choice of such arbitrary period of one year in estimating the decreased sales of the business. Nor does the evidence show that customers or dealers actually refused to buy batteries from the plaintiff on account of the appointment of a receiver, nor that the loss of customers was due to that cause. The allegation of the declaration was that a number of customers and dealers "refused to purchase" batteries from the plaintiff by reason of the appointment of said receiver. The word "refused" implies something more than a mere failure to buy. This testimony as to decrease in gross business and the estimate of future gross profit on each unit sold in such business, without more, was not sufficient basis for the jury to assess damages for loss of profits attributable to the appointment of the receiver. See Central Coal & Coke Co. v. Hartman, 111 Fed. 96; Yates v. Whyel Coke Co., 221 Fed. 603; Sparks v. McCrory (Ala.), 47 So. 332; Morrow v. Missouri Pac. Ry. Co., 123 S. W. 1034. The general rule is that the anticipated profits of a commercial business are too speculative and dependent upon changing circumstances to warrant a judgment for their loss. There is an exception to this rule, however, to the effect that the loss of profit from the interruption of an established business may be recovered where the plaintiff makes it reasonably certain by competent proof what the amount of his actual loss was. Proof of the income and of the expenses of the business for a reasonable time anterior to the interruption charged, or facts of equivalent import, is usually required. It does not appear in this case that the plaintiff in the court below had ever made a profit from its business, nor was there any evidence of actual profits before or losses after the receivership, in such sort as that the court or jury might determine with any degree of certainty what profits had been lost as

a result of the receivership proceedings. Counsel for defendant in error, as we construe their argument, practically admit that the testimony above referred to was not sufficient upon which to base a judgment for loss of profits due to the appointment of a receiver, but they say that the trial court in effect excluded this item of damages from the consideration of the jury by specific instructions numbered 3 and 6. By instruction 3 the jury was told that the plaintiff must prove "that damages claimed to be recovered are the result of the appointment of the receiver *pendente lite";* and by special instruction the court said: "As to any lost profits or costs of operation it is incumbent upon the plaintiff, in order to recover, to establish the fact that such loss or such costs of operation was due to the appointment of the receiver; and that from the fact alone that such profits were lost or such expenses incurred, you cannot assume without proof to that effect, that they were the result of the appointment of the receiver."

Counsel for defendant in error contend that this instruction accounts for the smallness of the verdict; that the jury, having apparently eliminated the question of lost profits, found a verdict for $2,500.00, which covered substantially the several other elements of damage which plaintiff below had introduced evidence to sustain (counting $1,000.00 attorney's fees as one of those elements). This surmise may be correct, but it is nevertheless a surmise. While the court gave the instructions mentioned at the request of the defendant, the court had already charged the jury that in fixing the amount of damages which the plaintiff should recover they should include, among other named elements of damage, "loss of profits from sale of manufactured articles of the plaintiff by reason of the unwarranted appointment of said receiver."

In Central Coal & Coke Co. v. Hartman (C. C. A. 8th Circuit), 111 Fed. 96, and 3rd and 4th and 5th headnotes are as follows:

"The general rule is that the anticipated profits of a commercial business are too remote, speculative and dependent upon changing circumstances to warrant a judgment for their loss. There is an exception to this rule that the loss of profits from the interruption of an established business may be recovered where the plaintiff makes it reasonably certain by competent proof what the amount of his actual loss was."

"Proof of the expenses and of the income of the business for a reasonable time anterior to and during the interruption charged, or of facts of equivalent import, is indispensable to a lawful judgment for damages for the loss of the anticipated profits of an established business."

"The plaintiff testified that the acts of the defendants had greatly diminished his business, prevented him from making contracts for future delivery of coal, and diminished his sales from 15 to 20 carloads per month, on which he would have made a profit of from $12 to $20 per car; that he could not tell what the volume of his business was before or after the acts complained of, and that he had no books or papers which would show this fact. He produced no evidence of the expenses or income of his business before or after the acts complained of. *Held*, that the evidence was insufficient to sustain a verdict for damages for the loss of anticipated profits."

Our conclusion therefore is that in overruling the objections of the defendant in the court below to the admission of this testimony as a basis for the allowance of damages for loss of profits, and in denying the motion to exclude the same from the jury's consideration, the learned trial

Judge was in error. In addition to the authorities above cited see 17 C. J. 785, 795; Hodge v. Fries & Co., 34 Fla. 63, 15 So. 682; 8 R. C. L. 648, 649; Orlando Orange Co. v. Hale, 119 Fla. 159, 161 So. 284.

When the witnesses were called and sworn in this case, they were, by the court, placed "under the rule" with the exception of E. O. Kirkeby, president of the plaintiff corporation, C. E. Yocam, one of the defendants, and H. D. Wentworth, vice-president of the plaintiff corporation and one of the attorneys representing the plaintiff. Whereupon the attorney for the defendant requested the court to apply the rule equally to Mr. Wentworth, stating that in addition to being an officer in the plaintiff corporation and counsel in the case, Mr. Wentworth was one of the witnesses for plaintiff. The court denied this motion, and the defendant excepted. This action of the court, in permitting Attorney Wentworth to remain in the court room during the taking of testimony of other witnesses, is made the basis for one of the assignments of error.

Counsel for plaintiff in error admits that the general rule is that a decision of a trial court with reference to placing witnesses under the rule, is a matter of discretion, but he takes the position that this discretion was abused because Attorney Wentworth had violated the 19th Section of the Canons of Professional Ethics promulgated by the American Bar Association* (and which, if the writer's recollec-

---

*Adopted by the American Bar Association in 1908; apparently modelled upon the "Code of Ethics" adopted by the Alabama Bar Association in 1887. The 19th Section of the Canons of Ethics here referred to follows practically *verbatim* the 18th Section of the Alabama Code of Ethics, which was the first Code of Ethics adopted in this country. This code was drafted by Col. Thos. G. Jones, afterwards Governor of Alabama and United States District Judge.

tion serves him correctly, were adopted* by the Florida State Bar Association several years ago). Section 19 reads as follows:

"When a lawyer is witness for a client, except as to merely formal matters, such as the attestation or custody of an instrument and the like, he should leave the trial of the case to other counsel. Except when essential to the ends of justice, a lawyer should avoid testfying in court in behalf of his client."

While this Court doubtless has the power to adopt this 19th Section of the Canon of Ethics, and add a provision that a violation of it would require the attorney when a witness for his client, to be placed under the rule, as one of the rules governing the trial of cases in the Circuit Court, it has not as yet done so. Like the courts of most other jurisdictions, it has left this matter of placing witnesses under the rule almost entirely in the hands of the trial courts. It has long been the usual custom of the trial courts in this State, in such cases, to except an attorney from the rule upon the ground that he is an officer of the court. And it may be that, in some instances, such exception of an attorney might also be made upon the ground that the Constitution gives every person the right to be heard in court, either in person, or by counsel of his own selection. In criminal cases at least, it is extremely doubtful that the trial judge could exclude the attorney for the defendant from the court room, because he happened to be a witness in the case, without coming in conflict with Section II of the Declaration of Rights in our State Constitution, and in civil cases, such action by the court might in some instances

---

*"Since writing the above, the writer has been informed that the official records fail to show that any final action was ever taken by the Florida State Bar Association in regard to this matter."

impinge upon the due process clause contained in the 12th section of our Bill of Rights.

Counsel for plaintiff in error contends that an attorney who is a witness for his client in this case on trial should be placed under the rule and excluded from the court room during the testimony of other witnesses, or be prohibited from testifying thereafter; and that the action of the trial court in this case in refusing to place the witness Went- worth under the rule was prejudicial to the defendant in the court below, and "might well have been the determining factor in the verdict as rendered." Undoubtedly, the rec- ord shows that Mr. Wentworth was a very important and material witness for the plaintiff and the jury evidently be- lieved his testimony.

Right here, we will take occasion to say that we thor- oughly approve of the 19th Canon of the Code of Profes- sional Ethics above mentioned. All members of the Bar of this State, whether members of the American Bar As- sociation or the Florida State Bar Association or not, should observe the rule thus laid down. Indeed, we think the principles expressed in this canon of ethics have been quite generally observed, not because the members of the bar of this State were all familiar with the fact that these prin- ciples had been embodied in the Canon of Ethics, but for highly practical, as well as ethical, reasons. After an ex- perience of some years at the bar and on the bench, the writer feels sure that the vast majority of attorneys approve of, and act in accordance with the principles contained in this section of the Canon of Ethics. Generally speaking, no attorney likes to be a witness for his client on the trial of any case. He knows that he is regarded by the jury as essentially an advocate for one side of the case and that jurors will naturally take that into consideration in weighing,

or perhaps disregarding, his testimony. On the other hand, there are occasions when the fair administration of justice demands that an attorney take the stand and testify. No hard and fast rule should be adopted which would, in unusual and exceptional cases, throttle or impair the proper administration of justice. Some latitude must be allowed for the exercise of a sound discretion in this regard by the trial courts.

In his very able brief, counsel for plaintiff in error among other things, says:

"I have great confidence, admiration and respect for the leading counsel for the plaintiff in this case, and yet such fact cannot prevent my recognition of the fact that the witness, Wentworth, by appearing as a material witness for the plaintiff in a suit in which he actively appeared as counsel was guilty of a direct violation of professional ethics."

In support of the court's ruling on this feature of the case, the "eminent counsel" for defendant in error above referred to Judge O. K. Reaves, a man who, like his opponent, has been signally honored by his brethren of the bar, and who also, early in his career, made a most enviable record as a Circuit Judge, and is now a member of the State Board of Law Examiners, has these pertinent comments in his brief filed in this case which, in justice to Mr. Wentworth, and in support of the ruling of the trial court, we herewith quote:

"Few rules of procedure are better established than that the application of the rule excluding witnesses is in the sound discretion of the trial court. Certainly no abuse was shown in this case. * * * We confess we never saw the 19th Canon of Professional Ethics of the American Bar Association which he quoted. Had we been familiar with it perhaps Mr. Wentworth would have taken no part in

the trial, but the record shows that he took a very inconsequential part, and the writer of this brief assumes the blame because he remembers distinctly that it was at his urgent insistence that Mr. Wentworth examined the witness, Cantrell, to whom the writer had not talked, and was practically inactive throughout the trial. We mention this, however, by way of explanation and not of apology. The essence of the canon referred to was observed in this trial. That Mr. Wentworth should testify was 'essential to the ends of justice.' He knew more than any living man about what had been done by counsel in the equity case and why it was done. He was able to speak not only as an attorney, but as an officer of the corporation, and being an attorney was able to explain as no layman could have done. An important element of the plaintiff's recovery was the item of attorney's fees in the preceding case. Only a reasonable fee was recoverable. What was reasonable must be found by the jury from the facts and circumstances of the preceding case and nobody could explain them like Wentworth because of his relation to the case and personal knowledge of it. To have kept him off the stand would have jeopardized the ends of justice without reason or excuse.

"We challenge the statement of opposing counsel that 'There can be no question under the record in this case that the witness Wentworth violated this Canon of Professional Ethics,' and while it is in no sense pertinent as we see it, we court the views of this Court to guide us in the future, because we aim to scrupulously observe the ethics of the profession, and court the fullest light to aid us in that regard."

We think this frank and reasonable statement might well be considered by this Court in support of the trial court's ruling on this particular point; and, in addition thereto, the

fact that Attorney Wentworth testified as to facts not covered by the testimony of other witnesses, so it made no difference whether he heard them testify, or not, thus removing him from one of the main purposes of the rule. Our holding is that the spirit of the Canon was not violated, certainly not intentionally, and that this matter of placing the attorney under the rule was within the sound discretion of the trial court, and that in this case such discretion was not abused. The assignments of error not above discussed have been considered, but we found them to be either not tenable, or that the rulings complained of were not prejudicial or harmful to plaintiff in error.

On account of the error of the trial court in submitting to the jury the question of whether or not there was a loss of profits due to the appointment of a receiver, after the receivership had terminated, and the amount of such loss, as one of the elements of recoverable damages, the judgment of the court below must be reversed.

Reversed and remanded.

WHITFIELD, C. J., and DAVIS, J., concur.

ELLIS, P. J., and TERRELL and BUFORD, J. J., concur in the opinion and judgment.

## ON REHEARING.

PER CURIAM.—Original opinion adhered to and judgment of reversal heretofore rendered confirmed on rehearing.

WHITFIELD, C. J., and ELLIS, TERRELL, BROWN, BUFORD and DAVIS, J. J., concur.