246 So.2d 584 (1971)
Gary Lee BELCHER, Appellant,
v.
IMPORT CARS, LTD., Inc., a Florida Corporation, Appellee.
No. 70-583.
District Court of Appeal of Florida, Third District.
March 30, 1971.
Rehearing Denied April 30, 1971.
Hall & Hedrick, Miami, for appellant.
Podhurst, Orseck & Parks, Colson & Hicks, Stephen Rossman and Shalle Stephen Fine, Miami, for appellee.
Before PEARSON, C.J., and BARKDULL and HENDRY, JJ.
HENDRY, Judge.
This appeal presents the questions of whether there was a binding contract between the parties and whether the record contained substantial, competent evidence to support the award of damages to the plaintiffs.
The defendant, Gary Lee Belcher, ("Belcher") appeals from a final judgment entered in a non-jury trial in favor of plaintiff, Import Cars, Ltd., Inc., ("Import Cars") appellee herein, awarding $12,000.00 *585 plus costs. The action was brought for an alleged breach of a written contract for the sale of shares in Belcher Motors, Inc., ("Belcher Motors") seeking damages for loss of business profits.
A related case between these parties appears to be still pending below. At one time the two cases were consolidated for trial, but were later severed.
Appellant presents two contentions for reversal: first, there was no enforceable contract between the parties which would afford the plaintiff a right to damages; and second, there was no evidence in the record of any damages suffered by the plaintiff. We agree and reverse.
We find merit in appellant's contention that the letter of March 21, 1969, which we reproduce in a footnote,[1] was not a contract and was subject to a condition precedent. We recognize the rule that findings of fact by the trial judge sitting as a trier of the facts will not be overturned *586 where there is substantial competent evidence to sustain such findings.
Nevertheless, we express the view that the agreement was only "* * * a formula to acquire all outstanding stock of Belcher Motors, Inc. * * *" That is, the parties had reached an agreement as to the price to be paid and certain other matters and wished to memorialize that agreement with full details to be worked out at the closing a few days later. We detail the factors influencing our decision. The agreement is in the form of a letter, and states that it is a "formula to acquire all outstanding stock * * *" Nowhere does the word "contract" appear. The language is in the future tense, and the last paragraph reads, "[I]f the foregoing expresses our intentions * * *" The term requiring approval of both Datsun and Commercial Credit was for the benefit of both parties, and failure of that condition would defeat the intentions of the parties. Despite a valuable set of assets including inventory and favorable lease, the immediate investment by the purchaser was about $15,000.00 to $20,000.00. Belcher did not turn over the keys to the premises, despite the letter saying Import Cars would have the right to possession. Particulars relating to the $32,000.00 note were to be determined at the closing. The lease was to be drawn prior to the closing.
It is our view that the letter of March 21, 1969, was not enforceable because it was subject to a condition precedent which was not fulfilled. Appellant Belcher, the seller, agreed to make certain concessions to Import Cars, among them a loan of $32,000.00 to Import Cars, to induce import Cars to consummate the deal. Belcher, at the negotiations, made clear to Mr. De Maria that the $32,000.00 would have to be secured from a bank. The record reveals that Belcher attempted to borrow the money but was unable to do so. These points appear to be uncontradicted in the record. While it is also uncontradicted that De Maria assumed that Belcher could raise the money, De Maria also knew of probable current business liabilities of between $45,000.00 and $47,000.00. See Cohen v. Mohawk, Inc., Fla. 1962, 137 So.2d 222.
We turn now to appellant's second point which concerns damages. Mr. De Maria, Mr. Raymond Saigh and Mr. James D. Evans testified concerning lost profits of Import Motors operating at the Belcher Motors premises under the name of "Datsun South." Mr. De Maria testified that the Belcher Motors property would be used in conjunction with adjoining property which De Maria leased. Over objection and motions to strike, Mr. Evans, who has been in charge of another auto dealership handling Datsuns and other foreign cars in various price brackets, testified to his gross profit of $273.00 per car or about $2,000.00-$3,000.00 per month net profit at a location some distance from the instant premises. Mr. Evans had acquired a Datsun franchise several months after Belcher terminated his. Mr. Saigh, an accountant familiar with automobile dealerships and financial adviser for about twenty-four years to Mr. De Maria's various foreign automobile dealerships in this county, testified to De Maria's vast experience and to the fact that Mr. De Maria always had a successful business operation. Mr. Saigh was present at the Belcher-De Maria negotiations. Both Mr. De Maria and Mr. Saigh testified that Belcher Motors was constantly losing money and never made a profit.
We find merit in appellant's second contention that there is no evidence in the record of any damages suffered by the plaintiff. McCormick, in his treatise explains:
"In proving a claim for loss of profits of an established business the record of past profits is usually the best available evidence. Since in a new business no record of past profits exist, it is much more difficult to make out with sufficient certainty a claim for loss of profits of a new venture. Past profits must usually be shown from the books of the business, and mere `estimates' of witnesses will *587 not serve if books were kept. Opinions of witnesses as to the amount of profits that would have been gained are not admissible, except where the opinion is that of an expert based upon relevant facts."
McCormick, Damages § 29, p. 107 (1935 ed.)
Florida has adopted the general rule and exception thereto relating to recovery of anticipated business profits in a non-industrial enterprise flowing from a breach of contract.
"* * * The general rule is that the anticipated profits of a commercial business are too speculative and dependent upon changing circumstances to warrant a judgment for their loss. There is an exception to this rule, however, to the effect that the loss of profit from the interruption of an established business may be recovered where the plaintiff makes it reasonably certain by competent proof what the amount of his actual loss was. Proof of the income and of the expenses of the businesss for a reasonable time anterior to the interruption charged, or facts of equivalent import, is usually required." New Amsterdam Casualty Co. v. Utility Battery Manufacturing Co., 122 Fla. 718, 166 So. 856, 860.
There is a question in each case whether the business is "established," that is, "whether it has such stability and regularity as to give its past record of profits some probative value as indicating the probable subsequent profits." McCormick, supra.
In this case the appellant's car dealership business operated for some time at a loss. In the New Amsterdam Casualty Co. case, supra, the court continued:
"It does not appear in this case that the plaintiff in the court below had ever made a profit from its business, nor was there any evidence of actual profits before or losses after the receivership, in such sort as that the court or jury might determine with any degree of certainty what profits had been lost as a result of the receivership proceedings."
Accord. Hodges v. Fries & Co., 34 Fla. 63, 15 So. 682 (1894); Welbilt Corporation v. All State Distributing Co., Fla.App. 1967, 199 So.2d 127; but see Twyman v. Roell, 123 Fla. 2, 166 So. 215, 217 (1936) and Ardell v. Milner, Fla.App. 1964, 166 So.2d 714, 716. See generally: Anno., 1 A.L.R. 156 (1919), suppl. 99 A.L.R. 938 (1935); Anno., 52 L.R.A. 209, 238-240 (1901).
Plaintiff sought to establish the following syllogism: James Evans' Datsun dealership makes a profit; Joseph De Maria's Datsun dealership would be similar to that of James Evans; therefore, Joseph De Maria's Datsun dealership would earn a profit. While Mr. Evans and Mr. De Maria had similar experience and there was a similarity in car equipment, the locations were different. "Datsun South" was a new name, while "L.P. Evans Motors" is a well-known, and long-established name in foreign cars in the area. Mr. Evans handled more than just new Datsuns and new BMWs on his lots. There was no evidence showing a sufficient similarity between the used car portion of the future De Maria dealership and the Evans used car operation. There was no evidence of comparability of overhead expenses. Therefore, from the record there is insufficient data upon which to conclude that the Evans dealership and proposed De Maria dealership would be sufficiently similar to generate a comparable profit. 11 Williston on Contracts § 1346A, pp. 249-250 (3d ed., 1968); cf. Jayess Investments Limited v. Barbee Foods, Inc., Fla.App. 1963, 155 So.2d 853, 854.
The trial court properly refused to allow as speculative the number of the projected new car sales per month, but erroneously allowed the expert to project anticipated profits of around $5,000.00 per month. Based upon what we have said earlier as to the general rule in recovery of anticipated profits in a commercial business flowing from a breach of contract, and an insufficient basis in the record for the expert's testimony, we conclude the court *588 erred in permitting such testimony as to anticipated profits under the circumstances here. Thus, there was a lack of substantial competent evidence to support the damages awarded.
For the foregoing reasons the judgment appealed is reversed.
Reversed.
PEARSON, Chief Judge (concurring in part and dissenting in part).
Having reached the determination to reverse this judgment because of the lack of substantial, competent evidence to support an award of damages, I did not reach the conclusion of the sufficiency of the contract to support a cause of action. Nevertheless, in view of the majority holding that the letter and acceptance, plus the delivery of possession to the purchaser did not constitute a contract, I must dissent. It is my view that the letter agreement fully meets the test laid down in Fincher v. Belk-Sawyer Co., Fla.App. 1961, 127 So.2d 130.
NOTES
[1] "March 21, 1969
"Gary Lee Belcher
3601 Bird Road
Miami, Florida

"Dear Gary:
"This letter is to set forth a formula to acquire all outstanding stock of Belcher motors, Inc.
"FIRST we will assume and pay all liabilities recorded on the books as of March 21, 1969, with the exception of those amounts due to you and/or and stockholder of the corporation or relative thereof up to the amount of $47,000. All liabilities over $47,000 will be paid by you in cash. You will pay to us at colosing (sic) the sume (sic) of $32,000.
"SECOND: The amount of $32,000 shall be the amount of a note made by us to you payable at the rate of $1,500 per month, including interest at 8% per annum from date of closing in equal monthly installments to begin June 1, 1969, the said note to be prepayable in whole or in part at any time without premium or penalty and to have a ten day grace period. All stock acquired by us will be pledged as security by collateral pedge (sic) agreement for the payment of the note to you or your assigns.
"THIRD: You will indemnify us on any and all contingent liabilities incurred prior to the date of this letter as provided in first above, provided they are presented prior to May 10, 1969.
"FOURTH: We will at closing enter into a lease with you or your nominee of the premises at 3601 Bird Road Miami, Florida for a period of eight years from April 1, 1969 at a monthly rental of $2,000, first payment due April 1, 1969 and in addition to the rent a $2,000 security deposit will be paid to you on May 1, 1969; we will pay all property taxes on the premises during the lease and including also the 1968 taxes.
"FIFTH: The transaction contemplated by this letter will be closed on or before March 27, 1969. At closing such documents as are necessary to effectuate the closing of the transaction will be executed and delivered. Prior to the closing, the parties will, upon request, supply each to the other the information necessary to prepare appropriate closing documents. Possession will be delivered immediately upon signing this letter and the business will be operated for the benefit of the undersigned from this date. Within 30 days of closing we will change the corporation name and will not use the name `BELCHER'. We agree further that as long as we lease 3601 Bird Road from you or your nominee you can buy one car per year from us at our cost. You will be allowed to remove your personal property as agreed between us from 3601 Bird Road. At closing Frank C. Hilson will deliver a general release to Belcher Motors, Inc. You are the owner of all the outstanding capital stock of that corporation.
"SIXTH: In the event that the transfer herein contemplated is not approved by both Datsun and Commercial Credit Corporation, this transaction shall be rescinded, possession re-delivered and the parties shall be released from any further liability hereunder.
"If the foregoing expresses our intention, please indicate in the appropriate space."
 "IMPORT CARS LTD., INC.
 "BY
 (s) Joseph A. De Maria
 "Joseph A. De Maria, Vice
 President
"ACCEPTED BY:
(s) Gary Lee Belcher
"Gary Lee Belcher"
[Witness signatures and certain printing not part of the contract are deleted.]