284 So.2d 27 (1973)
Sam PETRULLI et al., Appellants,
v.
APPROVED DRY WALL CONSTRUCTION, INC., et al., Appellees.
Nos. 73-129, 73-130.
District Court of Appeal of Florida, Third District.
October 2, 1973.
*28 Shalle Stephen Fine, Miami, for appellants.
Frates, Floyd, Pearson, Stewart, Proenza & Richman, Miami, for appellees.
Before BARKDULL, C.J., and CHARLES CARROLL and HENDRY, JJ.
PER CURIAM.
In these consolidated appeals, the sole point for our determination is whether the trial judge erred in ruling that appellants had no claim for loss of future profits where it had a cost plus contract with appellees for construction of certain portions of appellees' condominium complex units. It appears from the record that appellants completed work on 654 units of proposed 6,600 unit complex.
The trial court allowed appellants full recovery for the work completed on the 654 units, but denied their claim for loss of future profits due to the anticipatory breach of the contract stating that such damages were too "speculative".
We have carefully considered the record, briefs and arguments of counsel and are of the opinion that based on the record before us the trial judge did not err in this regard. We cannot say, with any reasonable degree of certainty, that appellees were, in fact, bound to build exactly 6,600 units by the terms of the contract or based on the record before us. As such, it is indeed too speculative for the court to predict how many units would have or should have been built. Without such a determination any attempt at assessing the loss of future profits would have been futile. While we cannot say, from the record on appeal, that this was the reasoning of the trial judge, it is an established principle of appellate practice that affirmance is proper where appellate review discloses a theory to support same, notwithstanding the theory relied on by the lower court, erroneous or otherwise. Firestone v. Firestone, Fla. 1972, 263 So.2d 223; In re Estate of Yohn, Fla. 1970, 238 So.2d 290; Naples v. State, Fla.App. 1958, 100 So.2d 78.
Accordingly, the final judgment appealed from is hereby affirmed.
Affirmed.
BARKDULL, Chief Judge (dissenting).
I respectfully dissent from the majority opinion. It appears to me that the opinion authored by the majority has done violence to the contract between the parties. They have treated it as a divisive contract when, in fact, it was a contract to do the drywall and plastering required under the general contract and specifications for "Century `21' `Commodore Plaza' plus all of the buildings to be constructed as part of the total Century 21 complex on Morgan Bay."
In rendering his decision, the trial judge made the following findings:
* * * * * *
"FINDINGS
"5) In April, 1969, the individual parties, SAUL J. MORGAN, NORMAN COHEN, SAM PETRULLI and NEAL MAZZER caused the formation of APPROVED DRY WALL CONSTRUCTION, INC., a Florida corporation. Stock in that corporation was then issued: 47% to MORGAN and COHEN and 47% to PETRULLI and MAZZER. On or about June 10, 1969, a Stockholders' Agreement was entered into between MORGAN, COHEN, PETRULLI and NEAL MAZZER. A copy of that Agreement was introduced in evidence as Counterclaimants Exhibit 1.
"6) The purpose of the formation of APPROVED was to operate as a drywall contractor and more particularly, the corporation was to act as the drywall contractor on a project known as `Century 21', a condominium complex to consist of 6,600 condominium units to be constructed *29 in 11 complexes in North Dade County, Florida. This was the understanding of Messrs. MORGAN, PETRULLI, COHEN and NEAL MAZZER at the time of the formation of APPROVED and the execution of the Stockholders' Agreement.
"7) In furtherance of this end, a contract was entered into on November 24, 1969, between MORGAN PROPERTIES, INC., a Florida corporation, acting as contractor on the Century 21 job and APPROVED. The contract is in evidence as Counterclaimants Exhibit 2. The contract provides that it is a contract for:
`Century "21" "Commodore Plaza", plus all of the buildings to be constructed as part of the total Century 21 complex on Morgan Bay.'
The owner of the project was designated as SAUL J. MORGAN ENTERPRISES, INC., a Florida corporation.
"8) MORGAN PROPERTIES, INC., a Florida corporation, and SAUL J. MORGAN ENTERPRISES, INC., a Florida corporation, were both corporations which were under the control and domination of Messrs. MORGAN and COHEN at all times material to this cause. MORGAN and COHEN were in complete control of the project.
"9) The contract, Counterclaimants Exhibit 2, is a contract to do the drywall work in the project on a cost plus basis. Article 16 outlines the contract price:
`The contract price shall be on a time and material basis, (cost plus ten percent net profit). Cost shall consist of all labor, materials, the necessary equipment, overhead, fixed and operating expenses, office and officers salaries and expenses, plus any additional cost that may occur in connection with the drywall, steel stud work and rough carpentry. Net profit to be ten percent of total cost. The cost of labor shall include provision for workmens compensation insurance, social security contributions by employer and welfare and other benefits, if any as may be payable to employees under applicable collective bargaining agreements.'
"10) The first complex of 654 units was actually constructed. APPROVED entered upon the drywall work pursuant to its contract. Prior to the commencement of the work are estimates of the cost of the work that had been prepared for Messrs. MORGAN and COHEN and their entities at the request by Mr. Maurice Gordon who testified in the cause. Mr. Gordon estimated the drywall costs, including profit for the first complex to be $1,080,544. His estimate is in evidence as Counter-Plaintiffs' Exhibit 19. An estimate had also been prepared by RICHARD ADILINO, an employee of APPROVED who testified in the cause. Mr. ADILINO's estimate of the drywall cost for the first complet was $1,170.378.
* * * * * *
"20) The Court specifically finds that APPROVED did its work properly and in conformity with its contract and further specifically finds that at the time of an alleged slowdown in the number of men on the job towards the very end of the job, APPROVED was owed substantial monies which had not been paid to it and was justified in refusing to carry out the job without being paid. The Court further specifically finds that the contract between APPROVED and MORGAN PROPERTIES, INC. was breached by MORGAN PROPERTIES, INC. and that such breach was the fault of MORGAN PROPERTIES, INC. and was occasioned by the action of SAUL J. MORGAN and NORMAN COHEN who were at that time in control of MORGAN PROPERTIES, INC. and who were at that time the owners of 47% of the stock of APPROVED and who were at that time asserting their rights to control APPROVED, which they re-assert in their Complaint in case No. 71-2774. The Court further finds that *30 SAUL J. MORGAN and NORMAN COHEN were, at all times material to these lawsuits, in full and complete control of the activities of MORGAN PROPERTIES, INC. as well as the activities of SAUL J. MORGAN ENTERPRISES which own the land on which Century 21 was to be built; and at the same time they were in a position of both legal and economic domination of APPROVED until October 28, 1970, when their loans were repaid, and thereafter they were in a position of economic domination of APPROVED through their control of MORGAN PROPERTIES, INC., SAUL J. MORGAN ENTERPRISES, INC. and the contract and payments thereunder which were APPROVED's economic lifeblood. The Court further finds that SAUL J. MORGAN and NORMAN COHEN, in their handling of that contract and their causing of the breach of that contract by MORGAN ENTERPRISES, INC., acted in direct violation of and derogation of their duty to APPROVED and in direct violation of the rights of PETRULLI, MAZZER and ADILINO in the corporation.
"21) APPROVED claims damages for monies owed at the time of the breach in the amount of $156,541.00, less set offs. The Court finds that there is presently due and owing to APPROVED for and on account of work done for the MORGAN and COHEN interest prior to the termination of the contract with APPROVED, less allowable set offs, the sum of $28,873.92.
"22) APPROVED has claimed as damages resulting from the anticipatory breach of its contract the loss of future profits. The Court finds that Messrs. COHEN and MORGAN are personally liable to APPROVED but the Court finds that future damages are speculative and, therefore, the claim for future damages will be denied." [Emphases added.]
* * * * * *
As found by the trial court and affirmed by this court, the appellants performed their subcontract in a workmanlike manner; they were forced off the job by an anticipatory breach of the contract and I would hold they are entitled to recover damages for the anticipatory breach, under the decisions of the Supreme Court of Florida in Twyman v. Roell, 123 Fla. 2, 166 So. 215; New Amsterdam Casualty Company v. Utility Battery Manufacturing Company, 122 Fla. 718, 166 So. 856. There is no question about the ascertainment of the damages; it was 10% on a cost-plus basis as defined in that provision of the contract set forth in the findings of fact, supra. The amount on the work to be completed was ascertainable by the trial court and should have been the yardstick applied to the balance of the contract. There is nothing in the documents in this record to indicate that the subcontract was only for a portion of the complex; to the contrary, the very wording of the contract includes "all of the buildings to be constructed as part of the total complex".
Neither this court nor the trial court has a right to re-write the agreement of the parties, and the mere fact that it is a cost-plus contract should not prevent the appellants from recovering. In this connection, see: White Spot Construction Corp. v. Jet Spray Cooler, Inc., 344 Mass. 682, 183 N.E.2d 719; Dobler v. Malloy, S.Ct.N.D. 1971, 190 N.W.2d 46.
Therefore, I would reverse so much of the order here under review that denied recovery of damages for the anticipatory breach of contract, and would return the matter to the trial court for the purpose of ascertaining these damages.