436 So.2d 997 (1983)
Frank M. WOLFE, Appellant/Cross-Appellee,
v.
AETNA INSURANCE COMPANY and Ricker-Horn, Inc., Appellees/Cross-Appellants.
No. 82-329.
District Court of Appeal of Florida, Fifth District.
August 4, 1983.
Rehearing Denied September 7, 1983.
*998 Jack A. Kirschenbaum of Wolfe, Kirschenbaum, Caruso, Mosley & Kabboord, P.A., Cocoa Beach, for appellant/cross-appellee.
Janet R. DeLaura of Smalbein, Eubank, Johnson, Rosier & Bussey, P.A., Rockledge, for appellee/cross-appellant Ricker-Horn, Inc.
Sutton G. Hilyard, Jr., of Pitts, Eubanks & Ross, P.A., Orlando, for appellee/cross-appellant Aetna.
ORFINGER, Chief Judge.
The plaintiff below appeals from a final judgment awarding him damages against his insurer and the insurance agency. We affirm in part and reverse in part.
Appellant Wolfe owned numerous improved properties and for many years had obtained insurance coverage on these properties through the appellee Ricker-Horn, Inc. In 1976, on Ricker's suggestion, Wolfe consolidated the coverages on his various properties into one master policy. This was done so that if Wolfe sold a property, it would just be removed from the policy and if Wolfe acquired a new property, it would be added to the policy, all by endorsement. This would eliminate the need for a separate policy for each piece of property Wolfe had acquired, avoid double coverage, and save money.
In 1976, Ricker obtained a commercial package policy written by Aetna Insurance Company (Aetna). This master policy contained a list of numerous properties covered under the policy, including three buildings known as the Executive Suites Motel which were insured for $67,000 each.
The master policy had an expiration date of February 2, 1979. In December of 1978, Ricker received from Aetna a notice that this master policy would expire during the coming February. One of Ricker's employees filled out an application form requesting a renewal of the policy, but in completing the application, erroneously failed to include the Executive Suites buildings. Aetna renewed the master policy on March 8, 1979, as per the application submitted. Subsequently, Ricker contacted Aetna on April 24, 1979, to advise of the omission and requested an endorsement that was to have retroactive effect back to February 21, 1979, the effective date of the renewal policy. On May 23, 1979, Aetna issued Change Endorsement No. 3, adding the three Executive Suites buildings. This endorsement was received by Ricker on May 29, 1979. Virginia O'Donnell, Ricker's employee, testified that upon her receipt of the endorsement she called Valerie Johnson, an employee of Wolfe, and advised that she had received the endorsement adding the Executive Suites buildings to the renewal policy. During May, 1979, there were at least two conversations between Virginia O'Donnell and Nancy Zywiolek, another of Wolfe's employees, on the subject of increasing, not cancelling, the insurance coverage on the Executive Suites. Ms. O'Donnell testified that on May 30th, she discussed the question of increasing coverage with Ms. Zywiolek and was told that Zywiolek would speak with Wolfe and call O'Donnell back regarding the desired coverage. Ms. O'Donnell testified Ms. Zywiolek never called her back as promised.
On June 26, 1979, Janet Robbins, the manager of the Ricker Agency, directed O'Donnell to contact Aetna to see if endorsement *999 No. 3 could be cancelled on a "flat basis," which would mean that Ricker would not be held responsible for the premium on the endorsement. Aetna agreed to such a cancellation. There is nothing in the record to indicate that Wolfe was ever notified of the intention to cancel the endorsement, or that Wolfe had any knowledge at all of its proposed cancellation, nor is there any evidence that Wolfe requested its cancellation. The original endorsement was returned to Aetna on June 26, 1979, and was cancelled flat. On July 9, 1979, the Executive Suites Motel was substantially destroyed by a tornado. Following the loss, Wolfe was advised by Ricker that he did not have coverage with Aetna. This suit followed.
Wolfe asserted various theories of recovery against Aetna and Ricker-Horn: (1) that these buildings were insured under the master policy and he was entitled to recover thereunder; (2) that Ricker was an agent for Aetna and if there was no coverage, Ricker was negligent in failing to procure insurance on the motel; and (3) that Aetna was obligated for punitive damages for its wilful and arbitrary refusal to settle the claim. On motion by Aetna, the trial court struck the claim for punitive damages. The case went to trial on the remaining counts. At the conclusion of the plaintiff's case, the trial court directed a verdict in favor of Aetna and against Wolfe on Wolfe's contract claim. The negligence count was submitted to the jury which found in a special interrogatory verdict that: (a) Ricker-Horn, Inc., was acting as Aetna's agent in its efforts to obtain insurance on the Executive Suites; (b) that Ricker-Horn, Inc., was negligent in its efforts to the extent of 70%; (c) that Wolfe was 30% negligent; and (d) Wolfe's total damages amounted to $98,742.95. Making the appropriate adjustment for the percentage of negligence attributed to Wolfe, the court entered judgment for Wolfe against Aetna and Ricker-Horn, Inc.
Wolfe contends that the trial court erred in directing a verdict in favor of Aetna on the insurance contract claim. On its cross-appeal, Ricker takes the same position. We agree, because jury issues were clearly presented by the evidence. At the close of Wolfe's case, Aetna moved for a directed verdict on the ground that the endorsement adding the Executive Suites to the renewal master policy was not countersigned by the agent. After first denying the motion, the trial court reconsidered it and then granted it, holding that the endorsement never came into existence because it was neither countersigned nor delivered to the insured. Both Wolfe and Ricker argue that whether there was insurance coverage on the buildings involved in the loss was a question for the jury, and that the absence of the agent's countersignature on the endorsement was not fatal to its becoming effective.
Aetna relies on section 624.425(1), Florida Statutes (1979), for its position that the endorsement never became effective because it was not countersigned by Ricker. That statute, in pertinent part, says:
(1) Except as stated in s. 624.426, no authorized property, casualty, or surety insurer shall assume direct liability as to a subject of insurance resident, located, or to be performed in this state unless the policy or contract of insurance is issued by or through, and is countersigned by, a local producing agent who is resident of this state, regularly commissioned and licensed currently as an agent of the insurer under this code.
Wolfe and Ricker argue that this statute, at most, requires only the policy to be countersigned, and not the endorsements. We need not decide this point because even if the statute applies to endorsements, it is clear that its purpose is to protect the public in purchasing insurance policies by requiring such policies to be issued by resident, licensed agents over whom the state can exercise control and thus prevent abuses. It would be anomalous to interpret this statute which is designed to protect the public in such way as to deny the public the very protection the statute is intended to provide. Here, no question arises as to the fact that Ricker is a licensed, resident agent and that all dealings were through that *1000 agency. Ricker's failure to countersign the endorsement does not, as a matter of law, invalidate it, because the absence of a countersignature may be waived, Meltsner v. Aetna Casualty and Surety Company, 233 So.2d 849 (Fla. 3d DCA 1969), and does not, in and of itself, control the effectiveness of the insurance. See State Farm Mutual Automobile Insurance Company v. Veenschoten, 272 So.2d 201 (Fla. 2d DCA 1973).
Agreeing that the absence of a countersignature may be waived, Aetna next contends that because Wolfe paid no premium for the endorsement, the coverage never took effect, citing First National Insurance Agency, Inc. v. Leesburg Transfer and Storage, Inc., 139 So.2d 476 (Fla. 2d DCA 1962). That case, however, does not support Aetna's position because the court held there that while failure of consideration is a defense to a claim of insurance coverage, the defense is not established by merely proving the absence of payment, but there must be shown that the plaintiff had not agreed to accept the policy if issued, carrying with it the implied promise to pay whatever premium would be due thereon. The evidence on this point did not warrant a directed verdict for Aetna. These buildings had been covered by the initial master policy and a premium was paid. They were omitted from the renewal policy because of an error of Ricker. Thus, a factual issue still remains as to the effectiveness of the endorsement notwithstanding the absence of payment, because Wolfe was never billed for the endorsement and the evidence permits the inference that he would have paid the premium had he been billed, as he did on the original policy.
Aetna argues as an alternative point that the court's ruling on Aetna's motion for directed verdict can also be upheld on the ground that even if the endorsement is given legal effect notwithstanding the defects in issuance, coverage was cancelled "flat" two weeks before the loss. Aetna states that for this cancellation, Ricker was the apparent agent of Wolfe. Wolfe asserts that Ricker was the agent of Aetna. The jury verdict stated that Ricker was acting as an agent for Aetna in its efforts to obtain the insurance.
If Ricker was the agent of Wolfe in cancelling the endorsement, the flat cancellation would be effective and the directed verdict would be proper, because in effect, the cancellation would have been requested by the insured. However, if Ricker was acting for Aetna, the trial court erred in directing the verdict. The jury found that Ricker was the agent for Aetna in procuring the insurance, but the question of agency with regard to the cancellation was not presented to it because of the directed verdict. Dual agency is recognized in the law when the interests of the principals are not adverse. See Heyman v. Weka, Inc., 333 So.2d 550 (Fla. 3d DCA 1976). Even where the interests of the principals are adverse, dual agency is not prohibited as a matter of law, if the principals are fully advised and consent thereto. 2 Fla.Jur.2d, Agency and Employment, § 74 (1977).
While Aetna now suggests that Ricker was acting for Wolfe, who Ricker was acting for is a factual issue to be determined by the jury where, as here, the evidence indicates that Wolfe never requested the cancellation and appears to have known nothing about it.
According to the terms of the policy, no notice of cancellation is required if cancellation is requested by the insured. If, however, the policy is cancelled by the company, five days written notice prior to cancellation must be given to the insured. Even assuming the right of the company to cancel an endorsement without cancelling the policy, no notice was given so any cancellation on the company's initiative would be ineffective.
Finally, Aetna says that if all else fails, because Wolfe received a jury verdict and thus benefitted from it, he should not be permitted to maintain the breach of contract action, because the contract remedy and the tort remedy are inconsistent, citing Durbin Paper Stock Company v. Watson-David Insurance Co., 167 So.2d 34 (Fla. 3d DCA 1964). Durbin does not support Aetna's *1001 position because that case held that the election between inconsistent remedies was not required to be made until after verdict is rendered, and the directed verdict on one of the counts dispensed with that opportunity. This court has also held that an election between inconsistent remedies need only occur before judgment is entered. Erwin v. Scholfield, 416 So.2d 478 (Fla. 5th DCA 1982). This argument is thus unavailing, because the directed verdict on the contract count removed any opportunity for Wolfe to elect.
We find no error in the striking of Wolfe's claim for damages resulting from delay in the settlement of his claim. Aside from any other legal impediment with respect to the tort count, such damages are far too speculative here to be capable of ascertainment. See New Amsterdam Casualty Co. v. Utility Battery Mfg. Co., 122 Fla. 718, 166 So. 856 (1936). On the contract count, loss of income is not a covered risk. Neither do we find error in the court's dismissal of Wolfe's claim for punitive damages, because there were no allegations of a willful or independent tort separate and distinct from any breach of contract. Butchikas v. Travelers Indemnity Co., 343 So.2d 816 (Fla. 1976).
Since we have reversed the entry of a directed verdict on the contract count, we note also that Wolfe may be entitled to pre-judgment interest if he recovers on that count, for a liquidated claim. See Brooks v. School Board of Brevard County, 419 So.2d 659 (Fla. 5th DCA 1982).
We find no merit in any of the other issues raised by appellant, nor on the issues raised on the cross-appeals except as previously noted. We find no error in the jury verdict on the negligence count.
We reverse the final judgment insofar as it rests upon the directed verdict in favor of Aetna on the contract claim, and remand for a new trial. Insofar as error is claimed in the finding of liability or the award of damages against both appellees on the tort claim, that judgment is free from error and is affirmed. On remand, if Wolfe is successful in his contract claim, he shall then be required to elect between his contract remedy and his tort remedy prior to the entry of a new final judgment.
REVERSED and REMANDED with directions.
SHARP and COWART, JJ., concur.