536 So.2d 334 (1988)
FOREST'S MENS SHOP and Ladies Den of Stuart, Appellants/Cross Appellees,
v.
Richard L. SCHMIDT and Charles E. Schmidt, Jr., As Trustees D/B/a Monterey Shopping Plaza, Appellees/Cross Appellants.
No. 87-0326.
District Court of Appeal of Florida, Fourth District.
December 21, 1988.
Steven L. Perry of Crary, Buchanan, Bowdish & Bovie, Stuart, for appellants/cross appellees.
Glenn N. Smith and Brian S. McHugh of Ruden, Barnett, McClosky, Smith, Schuster & Russell, P.A., Fort Lauderdale, for appellees/cross appellants.
WEBSTER, PETER D., Associate Judge.
Appellant (plaintiff below) appeals, and appellees (defendants below) cross appeal, from a final judgment, entered after a non-jury trial, awarding appellant $18,000.00 in lost profits. The parties agree that there is no evidentiary support for the award made by the trial court. However, that is the extent of their agreement. Appellant argues that it established lost profits, reduced to present value, of $486,837.00, and that the judgment should have been for that amount. On the other hand, appellees argue that no competent evidence was offered to establish lost profits in any amount, and that, therefore, the judgment should have awarded nominal damages only. A summary of the evidence follows.
Perry J. Smith is the sole stockholder in, and president of, appellant Forest's Mens Shop and Ladies Den of Stuart (hereafter "Forest's"), a retail men's and ladies' wear store. Forest's opened a store in Stuart, *335 Florida, in 1981. In 1982, the store moved into the Monterey Shopping Plaza (hereafter "Monterey") which is owned by appellees, as trustees.
Initially, Forest's leased space at Monterey designated units 46 and 47, which included some 2,000 square feet. Forest's installed a second floor, which increased its sales space to approximately 3,300 square feet.
While Smith had managed the store since 1974, he did not become the sole owner until 1984. Shortly after Smith became the sole owner of the store, the space designated unit 48, consisting of some 800 square feet, became available. Unit 48 was separated from the space leased by Forest's by a hallway (designated unit 47A) which connected a parking area with other stores. The hallway consisted of some 400 square feet.
Smith immediately approached Monterey with a proposal that Forest's be permitted to lease both unit 48 and unit 47A (the hallway). Smith planned to physically incorporate unit 47A into the newly-expanded store, while continuing to allow customer and tenant movement through that space. He intended to use the additional space to expand the store's inventory of existing merchandise and to add new lines, as well.
Monterey accepted Smith's proposal and, on February 26, 1985, Forest's and Monterey executed separate leases for units 47A and 48. Each was for a 92-month term. The lease for unit 47A required Forest's to pay rent on only one-half of the total square footage in recognition of the fact that, although the space would be physically incorporated into the expanded store, customers and tenants would continue to be free to use it as a passageway.
Forest's commenced construction necessary to incorporate the new space, incurring out-of-pocket costs of approximately $13,000.00 to $15,000.00. It also purchased approximately $60,000.00 to $70,000.00 worth of additional merchandise in anticipation of the expansion.
In May 1985, approximately three months after the leases had been signed and less than two months after the commencement of the lease term, Monterey told Forest's that it would not be possible to honor the lease for unit 47A because other tenants had objected. Monterey also told Forest's that if, in light of this development, Forest's no longer wished to lease unit 48, Monterey would let Forest's out of that lease. Monterey offered to reimburse Forest's for out-of-pocket costs incurred in physically setting up the new store. Two months later, Forest's responded that, if it could not lease unit 47A, it did not wish to lease unit 48.
Attempts to settle the dispute were unsuccessful, and Forest's filed suit, seeking damages. Prior to completion of the trial, Forest's explicitly waived any claim for out-of-pocket damages, electing instead to proceed exclusively on the theory that it was entitled to recover lost future profits.
At trial Forest's failed to offer any of its financial records in support of its claim for lost profits. Instead, Perry Smith testified, in a conclusory fashion, that based on past experience he estimated that the gross profit which would have been realized from the use of the additional space would have been approximately $80,000.00 per year. Multiplying this figure by the remaining lease term, Smith testified, again in a conclusory fashion, that total lost profits were approximately $640,000.00. Kevin Kenney, Forest's certified public accountant, testified, also in conclusory terms, that, in his opinion, the business is a profitable one. Finally, Dr. Merle Dimbath, an economist retained by Forest's, testified that he had developed an analysis of Forest's "economic loss" and that, based upon that analysis, he concluded that Forest's had lost $650,282.78 in profits which it would have realized over the term of the leases. He testified that, reduced to its present value, the amount of lost profits was $486,837.00.
Forest's financial statements for the periods ending September 30, 1984 and September 30, 1985, were offered in evidence by Monterey. The financial statement for the period ending September 30, 1984, reflects gross sales of $484,253,70; a net loss of $18,930.99 ($11,794.99 if depreciation is disregarded); a negative stockholder's equity *336 of $26,673.04; and a decrease in working capital from $214,955.26 to $150,734.66. The financial statement for the period ending September 30, 1985, reflects gross sales of $546,240.01; a net loss of $30,797.13 ($20,254.13 if depreciation is disregarded); a negative stockholder's equity of $57,955.17; and a decrease in working capital to $60,092.22. Neither financial statement reflects compensation to Smith disproportionate to his duties. (On the contrary, the financial statement for the period ending September 30, 1984, reflects compensation to Smith of only $7,064.38.)
Monterey also presented the testimony of Alan Fiske, a certified public accountant, and Gordan Douglas, an economist. Fiske testified that, based upon Forest's financial records, Forest's had had a history of losses, rather than profits. While its sales had increased, they had been accompanied by losses which had increased at an even greater rate. In Fiske's opinion, Forest's losses established that it was not a viable business and that, therefore, there was no factual basis upon which lost profits could be predicated. Douglas' testimony was to the same effect. He said that, in order to project future profits, there must first be a history of past profitability which, according to Forest's financial records, had not been the case.
The trial court entered a final judgment which addressed the evidence and testimony at some length. After expressing considerable concern regarding the sufficiency of the evidence offered by Forest's, the trial court, nevertheless, concluded that the evidence established that Forest's had lost some profits, and awarded $18,000.00.
When a party seeks lost future profits based upon a breach of contract or other wrong, the party must prove that the lost profits were a direct result of the defendant's actions and that the amount of the lost profits can be established with reasonable certainty. New Amsterdam Casualty Co. v. Utility Battery Mfg. Co., 122 Fla. 718, 166 So. 856 (1935); R.A. Jones & Sons, Inc. v. Holman, 470 So.2d 60 (Fla. 3d DCA 1985), rev. dismissed sub nom., Ford Motor Co. v. R.A. Jones & Sons, Inc., 482 So.2d 348 (Fla. 1986); Conner v. Atlas Aircraft Corp., 310 So.2d 352 (Fla. 3d DCA), cert. denied, 322 So.2d 913 (Fla. 1975). Difficulty in proving damages or uncertainty as to the amount will not prevent recovery as long as it is clear that substantial (rather than merely nominal) damages were suffered as a result of the wrong, and the competent evidence is sufficient to satisfy the mind of a prudent, impartial person as to the amount. See, e.g., R.A. Jones & Sons, Inc. v. Holman, 470 So.2d 60; Conner v. Atlas Aircraft Corp., 310 So.2d 352. However, an award of lost profits cannot be based on mere speculation or conjecture. Sampley Enterprises, Inc. v. Laurilla, 404 So.2d 841 (Fla. 5th DCA 1981); Mori v. Matsushita Electric Corp. of America, 380 So.2d 461 (Fla. 3d DCA), cert. denied, 389 So.2d 1112 (Fla. 1980).
While the amount of lost profits need only be established with reasonable certainty, a condition precedent to the recovery of such damages is proof, by competent evidence, that the business had earned profits for a reasonable time before the occurrence of the wrong complained of. E.F.K. Collins Corp. v. S.M.M.G., Inc., 464 So.2d 214 (Fla. 3d DCA 1985); Murciano v. Urroz, 455 So.2d 463 (Fla. 3d DCA 1984); A & P Bakery Supply & Equipment Co. v. Hawatmeh, 388 So.2d 1071 (Fla. 3d DCA 1980). In other words, "[i]n order to recover lost profits, there must be an on-going business with an established sales record and proven ability to realize profits at the established rate." Daytona Migi of Jacksonville, Inc. v. Daytona Automotive Fiberglass, Inc., 388 So.2d 228, 232 (Fla. 5th DCA 1980).
Here, Forest's financial statements for the periods ending September 30, 1984 and September 30, 1985, established that Forest's had not realized a profit during the two years that Smith had been the sole owner. Moreover, as sales increased so did losses, at an even greater rate. Thus, it is clear that Forest's failed to prove that it had earned profits for a reasonable time before Monterey breached the leases, a *337 condition precedent to recovery of lost future profits.
Neither Smith nor Dimbath addressed Forest's lack of profitability in the past. Instead, Smith testified, in conclusory terms, about anticipated gross profits, ignoring expenses entirely. Such evidence is not competent to establish lost profits. See, e.g., Born v. Goldstein, 450 So.2d 262 (Fla. 5th DCA), rev. dismissed, 458 So.2d 272 (Fla. 1984); E.T. Legg & Associates, Ltd. v. Shamrock Auto Rentals, Inc., 386 So.2d 1273 (Fla. 3d DCA 1980), rev. denied, 392 So.2d 1379 (Fla. 1981); American Motorcycle Institute, Inc. v. Mitchell, 380 So.2d 452 (Fla. 5th DCA 1980). Dimbath's analysis also ignored Forest's history of losses and its actual past expenses. As such, it amounted to nothing more than sophistry, and was not competent evidence upon which to base an award of lost future profits. See generally Belcher v. Import Cars, Ltd., 246 So.2d 584 (Fla. 3d DCA), cert. denied, 252 So.2d 801 (Fla. 1971). In short, Forest's evidence was simply too speculative a foundation upon which to base an award of lost future profits. See New Amsterdam Casualty Co. v. Utility Battery Mfg. Co., 122 Fla. 718, 166 So. 856 (1935); Crain Automotive Group, Inc. v. J & M Graphics, Inc., 427 So.2d 300 (Fla. 3d DCA 1983).
"While a trial judge is vested with reasonable discretion in awarding damages, there must be a reasonable basis in the evidence for the amount awarded." E.F.K. Collins Corp., 464 So.2d at 215. Here, the parties agree that there is no "reasonable basis" for the trial court's damage award. Because we are of the opinion that Forest's evidence of lost future profits amounted to nothing more than speculation and conjecture, the judgment must be reversed and the case remanded with directions that judgment be entered against appellees and in favor of appellant for nominal damages only, in a sum not to exceed one dollar. See Florida Outdoor, Inc. v. Stewart, 318 So.2d 414 (Fla. 2d DCA 1975), cert. denied, 333 So.2d 465 (Fla. 1976).
REVERSED AND REMANDED, with directions.
GUNTHER and STONE, JJ., concur.