ROBERT P. SMITH, Jr., Judge.
This case tests the proper construction of our mandate and opinion in Dept. of Transportation v. Burnette, 384 So.2d 916 (Fla. 1st DCA 1980). In this interlocutory appeal, the Department seeks relief from a circuit court order of contempt entered after remand, upon a finding that the Department had willfully failed to comply with final judgment as modified by our decision. Because we find the Department did not violate our decision and mandate, properly construed, we vacate the contempt order.
This dispute came before us previously after the Madison County circuit court enjoined the Department within 90 days to stop use of a water drainage system subjecting Burnette’s land to periodic flooding or to condemn the property as “permanently taken” through eminent domain. In reviewing this injunction on appeal, this court specifically reversed the finding that the property, acquired by Burnette long after the offending drainage pattern had been *52 established, had been “taken” by the State so as to require purchase in eminent domain. We did conclude, however, that the State was properly enjoined to end the casting of waters onto the Burnette property.
Accordingly, we affirm the portion of the circuit court judgment enjoining “the Department’s continued use of the . . . drainage system in such a way to burden this land.” 384 So.2d at 922. However, our opinion went further. First, we indicated our concern that the Department consider the interests of other area landowners, noting that if restoration of the old drainage pattern would flood a junior college since built, the Department might need to consider the alternative of eminent domain proceedings to acquire “some land or easements,” not necessarily Burnette’s for the revised drainage pattern. Secondly, we emphasized that “the manner and method” of relieving the Burnette flooding, through means including eminent domain if necessary, was “for the Department to determine in the exercise of its lawful powers.” 384 So.2d at 923.
Our mandate commanding the circuit court to conduct further proceedings in accordance with this prior opinion went down on July 14, 1980. Apparently reading our opinion as an endorsement of the 90-day compliance period in his original order, the circuit judge, 99 days after issuance of the mandate, held the Department in civil contempt, on Burnette’s motion, and set compensatory fines of $1,000 a day. Finding the Department in “willful” violation of the judgment, the judge ordered fines to continue until the Department corrects
the present diversion of surface water onto the land of Plaintiff ... or in the sole discretion of [the] DEPARTMENT OF TRANSPORTATION [acquires] the fee simple title to Plaintiff’s said lands, either by voluntary purchase, or by entry of an appropriate Order of Taking in a condemnation proceeding vesting title to Plaintiff’s said lands in the ... [Department], as delineated as an alternative remedy to it by said District Court of Appeal.
Faced with daily accumulation of fines potentially payable from the public treasury should this appeal fail, the Department then hastily instituted condemnation proceedings for Burnette’s entire 100-acre tract in hopes of purging the contempt as soon as possible. Those proceedings since came to a halt when the circuit court dismissed the petition for condemnation for want of an. appropriate Department resolution of necessity.
In considering the circuit court’s contempt order, we note primarily that we disagree with the characterization of the Department’s action as “willful.” We are aware that, despite language to the contrary in a few cases, willfulness generally is not required to support a finding of civil contempt. McComb v. Jacksonville Paper Co., 336 U.S. 187, 191, 69 S.Ct. 497, 499, 93 L.Ed. 599, 604 (1948). However, the circuit judge here nonetheless predicated his contempt order on the conclusion that the Department’s failure to end the drainage problem was willful. We find this view unsupported by substantial competent evidence in the record. Testimony before the circuit judge in October 1980 from a veteran Department official with 45 years’ experience in road operations indicated that the Department had surveyed five alternative solutions to the drainage problem since our July mandate; at the time this testimony was given, the Department also was moving to implement the alternative offering engineering, environmental and cost advantages over the others. While the Department, like other fabled slow-moving bureaucracies, conceivably may have conducted and completed this survey more promptly, we see no willful failure to act.
More basically, however, we must correct the circuit court’s impression that our opinion and mandate held the Department to a 90-day deadline after July 14 for completed correction of a drainage problem created by a series of events, not all the responsibility of the Department, more than a decade earlier. Such a requirement, under the realities of this case, would commit the Department to the very course our prior deci *53 sion emphasized it was not required to take. This is so because the only solution the Department conceivably might have implemented within 90 days — and even then with a maximum of cooperation from all parties — was condemnation of Burnette’s entire 100-acre tract in eminent domain proceedings.
Our prior decision explicitly found no taking of the 100-acre tract, so the expenditure of public dollars to purchase Burnette’s entire property would be highly problematic, and was recognized by the Department as problematic. The evidence indicates that only 50 acres of the tract is low-lying, and it is not altogether clear how much of that land, and which parts of it, would be necessary to accommodate the excess drainage. And even if the Department could have identified and condemned an appropriate portion of the land within 90 days, our decision clearly states that the choice of means to correct the situation was committed to the Department’s expertise. We did not, as the circuit judge seems to have put it in his contempt order, require an eminent domain purchase of the entire tract as an “alternative remedy” to stopping the flooding.
Using the expertise we asked it to employ, the Department concluded that the best alternative called for continuing a storm sewer line west into an existing water storage basin, not on Burnette’s land, which would be enlarged by excavation to 10 or 11 acres. This alternative, the Department’s road operations veteran told the circuit court, would take eight months to implement under an optimistic schedule for condemnation or purchase of the storage basin property, letting of bids and accelerated construction. Normally, he added, such a project takes five years to complete. And even under the accelerated eight-month schedule, the Department faced uncertainties due to the need to use an existing dry well for the revised drainage project, a use requiring a permit from another State agency over which the Department has no control. Moreover, the possibility of intervention by third parties in any permitting process further complicates any fixed schedule of work. In light of a more realistic timetable for achievement of our directive, our opinion should not have been read as insisting on a 90-day deadline.
We, or course, have authority to take corrective action where we find the trial court has departed from the directions of our mandate and opinion. E. g., Robinson v. Gale, 380 So.2d 513 (Fla.3d DCA 1980); Modine Manufacturing Co. v. ABC Radiator, Inc., 367 So.2d 232 (Fla.3d DCA 1979). This authority might be contrasted to more limited power to correct mandates for errors of law to prevent miscarriage of justice. Cf. Westberry v. Copeland Sausage Co., 397 So.2d 1018 (Fla. 1st DCA 1981). We quite understand that our prior opinion may have perplexed the trial court, given the decision’s emphasis on allowing the Department to determine appropriate methods of correcting the drainage problems and its concurrent oversight in failing to excise, more explicitly, the 90-day time period from the original judgment. Where the language of an opinion is susceptible to various inferences or even contains self-contradictions on its face, however, a district court may properly indicate what was intended by its prior decision. E. g., Hurt v. Virginia Heights Ass’n, 244 So.2d 483 (Fla. 4th DCA 1971); Klein v. Newburger, Loeb & Co., 153 So.2d 344 (Fla.3d DCA 1963). At an appropriate time, an appellate court in fact has an obligation to trial courts to clarify its opinions. Maeder v. Grayson, 227 So.2d 308 (Fla.3d DCA 1969). See also Castlewood International Corp. v. Wynne, 305 So.2d 773 (Fla.1974).
Accordingly, we emphasize that our prior decision requires the Department, within a reasonable period of time consistent with required planning, land acquisition, permitting and construction, to end this drainage flow burdening Burnette’s land. In doing so, the Department must necessarily consider whether by moving the drainage path off Burnette’s land under any solution it will tortiously cast waters again on the land of some other; therefore, we reject appel- *54 lee’s argument that the Department should solve Burnette’s problem individually by returning the drainage path to the north and subjecting the junior college to possible flooding.
We underscore this last point by emphasizing again that Burnette is not the only one with a legitimate interest in what happens to the existing drainage path, and that the Department is not the sole creator of this problem. The junior college and a housing development behind it, a nearby shopping center and indeed the City of Madison are, of course, legitimately concerned about alterations in a drainage pattern that has existed since 1969. This is a community problem in which Burnette’s specific desire to develop his land is a significant factor but not the only factor. When Burnette assembled this tract through purchases in 1972 and 1977 with a townhouse development in mind, Burnette knew full well, or should have known, of the problem of which he now complains so bitterly. The Department must now rectify the problem surely; but Burnette, having been forewarned, must not now be permitted to insist on frantic governmental action, spurred by fines against the public treasury, aiding Burnette at the expense of others.
We stress also that the Department must establish and comply with a reasonable but expeditious schedule and must aggressively pursue expedited procedures where available. Foot-dragging interrupted by periodic spurts of activity in anticipation of review by this court or any other should not be tolerated. The trial court certainly retains its full authority to exercise its contempt powers, and it may profitably use those powers, if necessary, to compel specific officials within the Department to act, to report on progress, to meet schedules and so forth. The circuit court must use its good judgment in determining what is reasonable, without requiring the Department to perform the impossible or to implement a hastily conceived solution to satisfy an arbitrary deadline. Ten days after its receipt of this decision, and without regard for the normal time for rehearing, the Department will report to the circuit court, in writing and under oath of the Department head, what it has accomplished within the last 90 days toward alleviating the problem, when that action was taken, and what further action the Department plans within the next 30 days.
Since we find the contempt order based on an erroneous interpretation of our prior decision, the imposition of compensatory fines is also invalid. The contempt order entered by the circuit court is VACATED.
ERVIN, J., concurs.
BOOTH, J., dissents, with opinion.